# Bessemer Water Works Co. *v.* Murphy.

### Cutting Off Water Supply.

(Decided November 19, 1912. 60 South. 533.)

1. *Waters and Watercourses; Breach of Contract to Supply; Damages; Fires.*—Where the city had contracted with the water company for water to put out fire and the water was so furnished, a plaintiff suing for a breach of contract to furnish him water for domestic purposes could not recover damages caused to the house by fire, but was confined to such damages as would result in the ordinary course of things from such a breach.

2. *Same; Turning Off Water.*—Where a water consumer violates the company's rules for which reason the company turned off his water, such consumer was not entitled to exemplary damages in the absence of a showing of an ulterior motive on the part of defendant.

3. *Same.* The evidence in this case stated and held not to warrant the finding of damages.

APPEAL from the Bessemer City Court.
Heard before Hon. J. C. B. GWIN.

·Action by P. H. Murphy against the Bessemer Water Works for damages for cutting off his water supply. Judgment for plaintiff and defendant appeals. Reversed and remanded.

PERCY, BENNERS & BURR, and T. T. HUEY, for appellant. Demurrers should have been sustained to the 1st count of the complaint.—*City Council v. Halsey,* 40 South. 665; *Lovejoy v. Bessemer W. Wks.,* 41 South. 76; *Birm. W. Wks. Co. v. Vinter,* 51 South. 356; *Same v. Ferguson,* 51 South. 150. Demurrer to the 2nd count should have been sustained.—*City Del. Co. v. Henry,* 34 South 389. The plaintiff was not entitled to recover exemplary damages.—*Ferguson's Case, supra; Vinter's Case, supra; Birm. W. Wks. v. Keiley,* 56 South. 838; *Pullman v. Krauss,* 40 South. 398; *B. R. L. & P. Co. v. McDonough,* 44 South. 960.

PINKNEY SCOTT, for appellee. No brief reached the Reporter.

PER CURIAM.—While many questions which arose in the court below on the pleadings in this case are presented by this record, the truth of the situation which brought about this controversy is made apparent from the evidence as it is set out in the bill of exceptions, and we will dispose of this case on its merits.

1. The facts are as follows: Appellee owns a house in Bessemer, which he rents out to tenants for residential purposes. The usual rental received by the appellee for the rent of the house is $16 per month. The appellant, under a franchise granted by the city of Bessemer, is engaged in furnishing the property owners of said city with water, and is charged with the duty of supplying water to any citizen or resident of the city, provided such citizen or resident subscribes for the

same, pays the usual and customary charges therefor, and in other ways meets the lawful and reasonable regulations which appellant has adopted for the conduct of its business with its subscribers. On June 16, 1906, the appellee, desiring the appellant to supply the above house with water, made the following application to appellant: "No. 126. Form 1-250. No. 1276. Bessemer, Ala, June 16, 1906. To the Bessemer Waterworks; The undersigned hereby applies for water service for 6 rooms, lot No. 11 and 12 in block No. 263 in said city and pledge myself to use water from the waterworks of said Bessemer Waterworks as soon as the necessary pipes can be extended and the water supplied thereto, and pay for the same according to the regular rules of said company, for a term of not less than six months, and do hereby agree to observe in the use of said water a strict compliance with the rules and regulations as now established by said company, and hold myself amenable to said rules and regulations during the continuance of said service; I hereby acknowledge the receipt of a copy of the rules and regulations and water rates of said Waterworks Company. P. F. Murphy, Applicant. Office of Bessemer Waterworks, Bessemer, Alabama. P. F. Murphy. For water supply to lot 11 & 12 in block No. 263, House number 2110 & 12, 3rd Avenue. Size of tap —— inch. Homer A. Hurd, Bookkeeper. Location of stop Box 162 feet E. of 21st st N/s 3rd Avenue. Size of tap ½ inch. Taylor Tapper Made 6/20, 1906." After the execution of the above contract, the appellant supplied water to the house by placing in the yard near the house a small hydrant. The house itself had no water connections, and the occupants of the house supplied themselves with water from the hydrant. The water was not measured by meter, but appellee paid $3.60 per quarter for the water privileges. The appellee

had the water supplied in the above way to said house, not for his own use, but for the use of his tenants while in the occupancy of said house. The appellee paid his water rents regularly and promptly in advance, and there is no dispute on that score. The hydrant appears to have belonged to appellee, and it was his duty to keep it in repair. This the appellee failed to do, and the water leaked and stood in a small pool near the hydrant, and, as some evidence tended to show, ran over the yard. In addition to this, parties not residing on the premises were accustomed to get water for their use at said hydrant, and it appears that on one occasion appellant had some one arrested for so doing. The appellee while the house was occupied by tenants paid his quarterly rental in advance, on April 1, 1911. Some time in May the premises were vacant, and during that month the appellant cut the water from the premises, but whether or not the house was then vacant was in dispute.

Among others, the appellant had the following rules:

"Sec. 2. Every person who has subscribed for a supply of water and procured its use in any premises must give notice to the company whenever he vacates such premises, so that the water may be cut off, to prevent waste, freezing, or misuse. His water rent becomes due on removal, if not already due, and must be paid unless his contract for supply is transferred with the written consent of the company."

"Sec. 4. No person or family supplied with water by this company will be permitted to use the water for any other purpose than that stated in the application or agreement, or that estimated for in fixing the rates, nor supply water in any way to any other person or persons, without a written permit from the office of the company. Nor shall they permit others to use their hose or attach-

ments or leave them exposed to use by others, whether supplied through meter or not. For willful or unreasonable waste, concealment, neglect or violation of any of these rules on the part of the consumer the company reserves the right to forfeit the payments made for the current month or quarter, according to which term the rent is payable for, and stop the supply of water."

"Sec. 12. To avoid waste the company reserves the right to cut off and discontinue the supply of water in any house with leaky fixtures."

The appellee, while testifying as a witness in this case, stated that he had never seen the above rules. In his written application to appellant, however, he contracts to be bound by the reasonable regulations of the company, and acknowledges receipt of the book of rules of the company, but for reasons hereinafter stated we do not think that it matters whether appellee ever saw the rules or not. Appellee testified, however, that, when he ascertained that the water had been cut from the premises, he was informd that the reason why the water was cut off was because other people were using the water, "and I must fix it, must lock it up," and he also testified that, when he applied to the general manager of the company for water to be resupplied to the premises, he was informed that the hydrant was out of fix, and that the company would again supply him with water when the hydrant had been placed by him in proper condition. If the evidence in this case is to be believed, other people were using appellant's water by means of said hydrant when the water was cut from the premises, and, if the evidence is to be believed, the hydrant was then out of fix, and was wasting the water upon the ground. It also appears that, if the evidence is to be believed, the water was cut by appellant from the premises because of the situation last above stated.

Some time after the water was cut off, the appellee obtained other tenants for the property, who moved into the house, and appellee then applied to the general manager of the company to again turn on the water, and the appellant, through such officer, according to the testimony of appellee, agreed to do so when the hydrant was fixed. Appellee did not fix the hydrant, but went to the house and turned the water on himself. In a day or two after that an agent of the company again cut the water from the premises, and told appellee not to turn it on again. During the time that the water was last disconnected, the appellee, as above stated, had a tenant in the house, and during that time the roof of the house caught on fire, but was extinguished by the fire department of the city of Bessemer. While the roof was undergoing repair, the house was vacant, but was again occupied by a tenant so soon as the roof was repaired. About that time appellant again turned on the water, but this did not occur until after the appellee had employed counsel to bring this suit. This suit was filed on June 22d, and the plumber who repaired the hydrant for appellee did so on June 24th, and that time the water had not been turned on. It therefore appears that this suit was actually brought before the water was last turned on, but it also appears that appellant refused to turn on the water until after appellee had repaired the hydrant. We copy the following from the testimony of the appellee as significant: "The plaintiff's (appellee's) attorney asked him the following question: 'In your judgment, could you have extinguished the fire if you had had water there?' The plaintiff answered, 'Why, I don't know, it helps. The bucket would not put the fire out.' The plaintiff's [appellee's] counsel then asked him the following question: 'How much rent did you lose by reason of not having the water on, if you know?' The

plaintiff answered, 'Well, the tenants stayed there; the best tenants, they stayed there. There were several parties moved out but from April up to July 1st I don't think that I have lost any [thing], except the house burning.' " We have undertaken in the above summary to give a full and complete statement of the facts.

2. In the case of *Birmingham Waterworks Co. v. Martini*, 2 Ala. App. 652, 56 South. 830, this court used the following language: "In all actions for damages for the breach of a contract, the law is that the damages recoverable are such as were the natural and proximate consequences of the breach, and such as may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made as a probable result of such breach, and only such damages. In some instances there are wrongs which grow out of a breach of a contract, and in which assumpsit and an action of trespass on the case are concurrent remedies. 'In such cases,' says our Supreme Court, 'the measure of damages cannot be altered in any substantial respect by the mere adoption of one form of action rather than another for the redress of the same grievance,' and in such cases the damages recoverable are those which are the natural and proximate consequences of the breach, and such as may reasonably be supposed to have been within the contemplation of the parties as a consequence of the breach, when the contract was made. —*Western Union Telegraph Co. v. Westmoreland*, 151 Ala. 31.9 [44 South. 382]." The above rule was as a part of the common law inherited by us from England, and has ever been the rule in this state. It is the only rule by which appellee's damages, if he is entitled to any, can be measured under the facts of this case.

The contract of appellee with appellant called for water for domestic purposes, and only such purposes.

39 CA

Only such damages as would result in the ordinary course of things to appellee for appellant's failure to supply water for domestic purposes were within the contemplation of the parties when the above contract was made by them, and are the only damages which are, under the facts of this case, recoverable in this action, if the appellee is entitled to recover at all. Among such damages are the expenses incurred in supplying the premises with water from some other source, and the physical annoyances, such as the loss of the use of the bath tub, having to carry water from a neighbor's house, etc., during the period of the suspension of the water service.—*Birmingham Waterworks Co. v. Ferguson*, 164 Ala. 494, 51 South. 150. "Accidental consequences not likely to ensue from the wrong done are generally too remote to be the foundation of a recovery."—*Birmingham Waterworks Co. v. Ferguson, supra; Culver v. Hill*, 68 Ala. 66, 44 Am. Rep. 134; *Burton v. Henry*, 90 Ala. 281, 7 South. 925. When the city of Bessemer granted the appellant the right to maintain and operate its system of waterworks in that city, it made a contract with appellant to furnish it with water for fire protection in said city, and it appears from the evidence that appellant's water under its contract with the city of Bessemer was used in saving appellee's house from destruction on the occasion named. When the hydrant was placed in appellee's yard, it was placed there, not under a contract to furnish appellee with water for protection against fire, but to furnish water for domestic purposes, and without further discussion it seems that it is plain that the appellee was entitled to nothing for loss by fire because the water supply was cut from his premises on the occasion named. In fact, his own testimony, which we have above quoted, shows that it was extremely doubtful whether the pres-

ence of the water in the hydrant on the occasion named would have been any material benefit to him in his efforts to extinguish the fire.

3. The appellee did not live in the house referred to, and he made the contract with appellant for the convenience and comfort of his tenants while occupying the house and for no other purpose. He therefore suffered no physical inconvenience, annoyance, or discomfort on account of the alleged breach by appellant of its contract, and no pecuniary loss, unless thereby he lost rents which he otherwise would have received from the house during the period covered by the controversy. On this subject, as we have already said, the appellee testified: "Well, the tenants stayed there; the best tenants, they stayed there. There were several parties moved out but from April up to July 1st I don't think I have lost any [thing], except the house burning." The period covered by this controversy is embraced in the above period "from April up to July 1st," and, as the appellee lost no rents from the property during that period, it is evident that he suffered no substantial damage, according to his own testimony, which can be recovered in this suit by reason of the alleged failure of the appellant to perform its duty in furnishing water for domestic purposes to his house.

4. In this case there was no evidence that the appellant oppressively or for ulterior and unlawful purposes cut its water connections with appellee's house, and there was not a scintilla of evidence from which such a conclusion could have reasonably been drawn. We have frequently adverted to the legal truism that exemplary damages are allowable only in cases where the facts justify their imposition, and then not because the party suffering from the wrong is entitled to them as a matter of right, but only as a punishment to the wrongdoer, in

order that he and others in similar business may be deterred from such wrongdoing in the future.—*Birmingham Waterworks Co. v. Keiley,* 2 Ala. App. 629, 56 South. 838. We have also frequently stated that "where there is no malice connected with the wrong complained of, or such gross negligence or oppression or fraud as amounts to malice, the compensation or amount of damages should be confined to the actual injury and its immediate effects."—*Birmingham Waterworks Co. v. Keiley, supra; Wilkinson v. Searcy,* 76 Ala. 176; *Willis v. Miller* (C. C.), 29 Fed. 238; *Lienkauf & Strauss v. Morris,* 66 Ala. 406.

In this case the hydrant in the yard, which it was appellee's duty to keep in order, was out of order, and for that reason the water of appellant was being wasted. In addition to this, people other than appellee's tenants were using that water by means of the hydrant, and appellee took no steps to prevent them from so doing. This being the situation, appellant, for the above reason, and for the above reason only, cut the water from the premises. It is true that appellee testified that he did not know of the rules of the appellant which we have above set out in our statement of the facts, but they were, nevertheless, appellant's rules, and as the water was being supplied to appellee, not by meter, but upon a flat rate, those rules were reasonable and just. Appellant's servants in and about what they did were acting under the reasonable regulations of their superior, and, as this is true, the idea of malice, or of that reckless indifference to the rights of others which sometimes amounts to legal malice, is rebutted by the circumstances of this case. In addition to this, the evidence discloses that appellee knew that it was his business to keep his hydrant in a reasonably fit condition, and that he also knew that the water for which he was being

charged only a flat rate was for the use of the occupants
of his house, and not for the use of others. A short
glance at the true situation renders the justice of what
we have above said apparent. Appellant's servants find
a house which appellant has agreed to furnish with wa-
ter for domestic purposes, with the hydrant from which
the water was to be obtained in a leaky condition, and
wasting water upon the ground. They find that the
hydrant is open to public use, and that at least one
member of the public is, contrary to common right, con-
stantly using that water, and that the owner of the
house has taken no steps to protect appellant from the
unwarranted use of the water. To protect appellant
from the above losses, they cut the water from the prem-
ises. It seems plain that neither malice in law nor mal-
ice in fact can be inferred from this act of appellant's
servants. Appellee testified, it is true, that he did not
know that the hydrant was out of fix, but it was out of
fix, as the uncontradicted evidence of the plumber and
the bill which, on June 24, 1911, the appellee paid the
plumber for his work, disclose. It is also true that ap-
pellee also testified that he did not know that strangers
were using the water, and that he never gave any one
permission to use the water, but the uncontradicted evi-
dence discloses that strangers did use the hydrant for
water, and that it was upon information as to the con-
dition of the hydrant and the use of the water by stran-
gers that appellant acted when it cut the water from the
premises. It is also true that appellee, who testified
that he rarely visited the property, swore that he him-
self, after he discovered that the water had been cut
from the premises, turned the water on again, and that
thereupon appellant again cut the water from the prem-
ises by cutting the pipe; but he also on that subject tes-
tified as follows: "Mr. Williams [one of the appellant's

agents or servants] told me all the neighbors were using the water and to look after it, to arrest them. At the time these tenants moved in I saw Mr. Gammon [appellant's general manager], and asked him to turn the water on, and he said he would as soon as I fixed the hydrant, which was leaking. I saw the plumber then, but there was no leak that I knew of. There was a deep pool with a little water in it under the hydrant. Before fixing the hydrant, I got a key and turned the water on myself, about June 12th, 13th, or 14th. The waterworks turned it off again. Mr. Gammon notified me to fix the plumbing, but am not sure whether that was before or after I saw the plumber. I sent a plumber round there, and told him to fix the leak if there was any there. The company turned the water on, but not until after it had been sued." This suit, as above stated, was brought on June 22d, and the plumber fixed the hydrant, according to the appellee's evidence, on June 24th, after which appellant turned on the water. At the time appellee saw "a deep pool with a little water in it under the hydrant" the water had been cut from the premises, and, of course, the hydrant at that time was not leaking. It is evident from the above that this entire controversy is due to the refusal of appellant to furnish water to appellee because appellant was informed that appellee's tenants were permitting others to use water from the hydrant, and to information received by appellant that a defect existed in the hydrant, and that the controversy is not due to any such oppressive, wanton, malicious, or reckless acts as justify the imposition of exemplary damages.—*Birmingham Waterworks Co. v. Keiley, supra.*

5. We have already stated that the evidence in this case shows affirmatively that appellee was put to no physical annoyance or inconvenience by reason of the

absence of water from said premises. He did not live in the house or personally use the water, and he was therefore entitled to no damages for any mental harassment or vexation that he may have suffered, if any.— *Birmingham Waterworks Co. v. Ferguson, supra; Birmingham Waterworks v. Martini, supra; Birmingham Waterworks Co. v. Vinter,* 164 Ala. 490, 51 South. 356.

6. In many ways the trial court in its rulings on the evidence, and in its charge to the jury, ignored the principles of law above laid down, and without further discussing the case the judgment of the court below is reversed and the cause remanded for further proceedings in accordance with the views above expressed.

Reversed and remanded.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED, while he was a judge of this court, and is adopted by the court.