# Richmond & Danville Railroad Co. *v.* Vance.

*Action by Passenger against Railroad Company, for Damages on account of Personal Injuries.*

1. *Evidence as to condition of cross-ties; variance.*—In an action to recover damages for personal injuries, one count of the complaint alleging that the injuries resulted from the failure of the railroad company to keep the switch at which the cars were derailed in good and safe condition, and the other containing only general averments of negligence in the conduct and management of the engine and cars (as in *L. & N. Railroad Co. v. Jones,* 83 Ala. 376), evidence as to the rotten and unsafe condition of the cross-ties within thirty feet of the switch is relevant and admissible for the plaintiff, and is not objectionable on the ground of variance.

2. *Recalling witness with view to impeaching him.*—It is discretionary with the trial court to permit or refuse to let a witness be recalled for the purpose of laying a predicate to impeach him, after he has been examined and cross-examined.

3. *Punitive damages.*—Exemplary (or punitive) damages may be awarded against a railroad company, in an action for personal injuries received, when the evidence shows "negligence of such character and degree as evince a grossly careless disregard of the safety of the public, or, what is of equivalent import, recklessness, wantonness, or willfulness;" but not when simple negligence only is shown.

4. *Rotten cross-ties as negligence.*—Evidence showing that the cross-ties on the railroad, at and near the scene of the accident, were in a rotten and unsafe condition, establishes simple negligence only, when it is not also shown that the defendant had knowledge of their defective and dangerous condition; and the fact that the defects had existed for two weeks, does not import knowledge as matter of law, though knowledge may be inferable from it by the jury. (Qualifying expression in *Ala. Gr. So. Railroad Co. v. Hill,* 90 Ala. 71.)

5. *Punitive damages; injuries from concurring causes.*—If plaintiff's injuries were caused by two co-operating independent causes, the existence of one of which was unknown to defendant, and the other, though known, was insufficient of itself to produce the result, a case for the allowance of exemplary damages is not made out.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Mrs. Dixie Vance against the appellant, a corporation operating the Georgia Pacific Railroad, to recover damages for personal injuries sustained by

[Richmond & Danville Railroad Co. v. Vance.]

plaintiff on June 21st, 1890, while travelling as a passenger on said road, the train on which she was riding being derailed and partly wrecked. The complaint contained two counts, the substance of which is stated in the opinion. The only plea was the general issue. The jury gave the plaintiff a verdict for $2,500. The defendant reserved numerous exceptions to the rulings of the court on evidence, which are here assigned as error; and also to portions of the affirmative charge given by the court as follows : "If the jury believe from the evidence that the cross-ties were in a rotten condition, and that such rotten condition proximately contributed to throw the train from the track, then it is for them to say whether or not the cross-ties were in such condition as that a careful inspection would have apprised the defendant that they were in a defective condition; and if the jury find that the cross-ties were in such defective condition, and that careful inspection would have informed the defendant of it, and that the defendant was negligent in and about allowing the track to remain in that condition, then they are authorized, under this complaint, to find that the defendant was negligent in and about the track and ties." "Also, that the law allowed the jury, in some cases, in addition to actual damages, to assess damages by way of punishing the defendant; that such damages are allowed when it appears that the defendant's act which caused the injury was not merely negligent, but was recklessly negligent, or of a willful character, or when the injury was intentionally inflicted; and that the jury may, in such cases, go further than the assessment of actual damages, and increase the verdict by way of punishing the defendant."

The defendant also duly excepted to the refusal of each of the following charges, which were asked in writing : (1.) "The defendant admits that there was a defect in one of the bolts which held together the parts of the switch, and claims that this defect wholly caused the accident, but that it was a hidden defect, not discoverable by the use of due care on the part of the defendant's servants who were charged with the duty of inspecting and keeping it in repair; and that no defect was discoverable by the use of due care, when it was placed in the switch; and if the jury believe this is true, as shown by the evidence, their verdict should be for the defendant." (2.) "There is no evidence in this case that the persons in charge of defendant's train were guilty of any negligence producing or contributing to plaintiff's injuries." (3.) "If the jury believe the evidence, they must find for the defendant under the second count." (4.) "Under the allegations of the complaint, the condition of those parts of the railroad track

apart from and not connected with the switch itself, can not be considered by the jury as evidence of negligence on the part of the defendant." (9.) "If the jury believe the evidence, they are bound to find that the defendant exercised due care originally in the selection and construction of the switch, and of the iron bolts which formed part of it." (12.) "If the jury believe the evidence, they can not assess any punitive damages against the defendant." (16.) "If the jury believe from the evidence that the coach, or the rear trucks of the coach, were not derailed in any way except by leaving the main line and running into the siding at the point of the switch, and that the condition of the cross-ties and rails at that point, though defective, was not sufficiently defective to have produced such a result, except by the aid of the broken bolt which has been testified about, they can not assess punitive damages against the defendant." (17.) "The first count of the complaint charges that the accident which injured plaintiff was caused by a defect or defects in the switch at the point where the coach in which plaintiff was travelling left the track, and some defect or defects in the switch itself is thus claimed by plaintiff to have caused the accident; and if the jury believe from the evidence that the cross-ties on the track, at or about the switch, were not a part of the switch, then, whatever may have been their condition at the time, the jury can not consider it as tending to show negligence on the part of the defendant."

The assignments of error embrace all the rulings to which exceptions were reserved by the defendant.

JAMES WEATHERLY, for appellant.

BOWMAN & HARSH, *contra.*

CLOPTON, J.—Appellee sues to recover damages for personal injuries received while a passenger in defendant's cars. The complaint contains two counts. The first avers that the negligence consisted in failure to keep in good and safe condition the switch at the point of the accident. The second alleges no special acts or omissions, as constituting the negligence; it avers, generally, "that the defendant did not use due and proper care or skill in and about carrying plaintiff as a passenger as aforesaid, but so negligently and unskillfully conducted itself in that behalf, and in conducting, managing and directing the coach in which plaintiff was such passenger, and the engine whereby said train was drawn upon and along said railway, that the coach which contained plaintiff was

[Richmond & Danville Railroad Co. v. Vance.]

shaken and wrecked as aforesaid." The first eleven assign-
ments of error go to the refusals of the court to exclude the
testimony of various witnesses as to the condition of the
cross-ties within thirty feet of the switch.

The second count is a substantial copy of the second count
of the complaint in the case of the *Lou. & Nashville R. R.
Co. v. Jones*, 83 Ala. 376, from which it was evidently taken.
In that case it was held, that the defects of structure, or want
of repairs, need not be averred with more particularity than
was found in the second count of the complaint. This was on
the principle, that under our system of pleading, a party com-
plaining of injury, caused by the negligence of the company
operating a railroad, need not aver the particular defects in
the condition of the track or machinery in which the negli-
gence consists, these being considered as peculiarly in the
knowledge of the officers or agents of the company. Under
such general averments, evidence of defects in the track at or so
near the place of the accident as to afford reasonable inference
that they proximately contributed to the injury, is admissible.
For the same reason charges 4 and 17 asked by the defendant,
which proceed on the theory that such evidence is not admis-
sible under the complaint, were properly refused.

2.   Whether the court should have permitted, or refused to
permit, the witness Hood, who had been examined on the
part of defendant, and cross-examined, to be recalled by
plaintiff, for the purpose of laying the predicate for his im-
peachment by proof of contradictory statements, was a matter
of discretion, and not revisable in this court.—*State v. Marler*,
2 Ala. 43; *Bell v. State*, 74 Ala. 420.

3.   The most material question in the case arises on the
charges relative to punitive damages. The rule settled in
this State is, that exemplary damages may be awarded in an
action against a railroad company for personal injuries re-
ceived, when the negligence is of such character and degree
as to evince a grossly careless disregard of the safety of the
public, or, what is of equivalent import, recklessness, wanton-
ness, or willfulness.—*So. & No. R. R. Co. v. McLendon*,
63 Ala. 266. The uncontroverted testimony shows, that the
engine, baggage-cars, second-class coach, and the front trucks
of the rear coach safely passed the switch, continuing on the
main line, and that the rear trucks of the rear coach ran up
the switch on the side track. There is evidence tending to
show that every other cross-tie within twenty-five or thirty
feet of the switch was so rotten that the spikes could be pulled
out with the hand, and that they had been in this condition
for two weeks previously. There was also evidence tending

to show that the superintendent and division-master inspected that part of the road, and the switch, two or three days prior to the accident, found nothing the matter with the switch, and most of the ties good, occasionally a defective one; also, that the section-master had recently put in some ties at that place. There was other evidence tending to show that the accident was caused by the breaking of a bolt, which held the switch in position after being thrown.

4. Conceding that the cross-ties were defective, as stated by plaintiff's witnesses, the failure to remedy the defects, if the officers or agents of the company were ignorant thereof, was simple negligence, which does not authorize the allowance of punitive damages. Consciousness of the existence of such defective condition, and that the derailment of the car might or would be the probable consequence thereof, is an essential constituent of the degree of negligence evincing a reckless indifference to consequences, or a wanton or willful infliction of injury. The terms, *recklessness, wantonness* and *willfulness, ex vi termini* imply this much. This view accords with the principle announced in *Ga. Pac. R. R. v. Lee*, 92 Ala. 262: "Willful and intentional wrong, a willingness to inflict injury, can not be imputed to one who is without consciousness, from whatever cause, that his conduct will inevitably or probably lead to wrong and injury." The application of the principle in that case is stated as follows: "In the case at bar, this consciousness could not exist on the part of defendant's employès, until they knew plaintiff's wagon and team were in a position of danger, and no degree of ignorance on their part of this state of things, however reprehensible in itself, could supply this element of conscious wrong, or reckless indifference to consequences, which from their point of view would probably or necessarily ensue." This, it must be admitted, does not strictly harmonize with the expression in the opinion in *Ala. Gt. So. R. R. Co. v. Hill*, 90 Ala. 71, to the effect, "We are satisfied that it [the evidence] tended to show a condition of the track not to know and remedy which was such gross negligence on the part of the company as implied recklessness and wantonness—such indifference to the probable consequences of its continued use—such disregard of the safety of passengers being transported over it—as is the equivalent of intentional wrong, or a willingness to inflict the injuries complained of." The conclusion in that case, sustaining the refusal of the court to charge that under the evidence the plaintiff could not recover punitive damages, was correct. The inaccuracy of the expression quoted consists in making the omission to discover and remedy the bad condition of the

track—simple negligence—the equivalent of consciousness of the probable consequences, instead of saying that such consciousness might be inferred from the evidence. The opinions in both cases were prepared by the same justice, the latter being a virtual modification of the expression above quoted in accordance with the views therein expressed. In the present case, there is evidence from which, if believed, knowledge of the defective condition of the cross-ties may be inferred, and for this reason charge 12, asked by defendant, was properly refused.

Defendants further requested the court to charge, that punitive damages can not be assessed, if "the coach or rear trucks of the coach were not derailed in any way except by leaving the main line, and running into the siding at the point of the switch, and that the condition of the cross-ties and rails at that point, though defective, was not sufficiently defective to have produced such a result, except by the aid of the broken bolt." There is evidence tending to show that the breaking of the bolt was the real cause of the derailment; and there is no evidence that the defendant's officers or agents knew of any defect in the bolt, or from which such knowledge can be inferred; hence no evidence tending to show, or from which the jury would be authorized to infer, reckless, wanton or intentional negligence in respect to the bolt. When referred to the evidence, the proposition of the charge is, that when an injury is produced by the co-operation of two independent causes, the existence of one of which is unknown, and the other insufficient to produce the result without the co-operation of the unknown cause, knowledge of the existence of such other cause does not make a case for the allowance of punitive damages. The proposition seems logically to follow from the principle, that consciousness of the probable injurious consequences of one's conduct, or omissions of duty, is an essential element of reckless, wanton, or intentional negligence. If the cross-ties were not so defective that the defendant ought to have reasonably anticipated the derailment of the train as the probable consequence thereof, and it would not have occurred but for the intervention of the breaking of the bolt, the defective condition of which was unknown and not suspected—if the condition of the ties would not itself have probably produced the injury—it can scarcely be said that consciousness of the probable derailment of the coach at that point, such as evinces a reckless indifference to consequences, is inferable from mere knowledge of such condition of the ties. Consciousness of the probable consequences can not be said to exist, unless there be knowledge of a cause or

[Allison v. Little.]

causes naturally calculated to produce them.  The charge should have been given.

We discover no error in the other rulings of the court.

Reversed and remanded.

93  150
95  147
95  536

93  150
97  161
97  307
97  580

93  150
99   34

93  150
100  388
100  626
101  124
101  294

93  150
107  539
107  608
108  584

93  150
112  544
114  362
115  345

93  150
124  466
124  467
124  468

93  150
135  230
135  515

93  150
136  410