# Birmingham Water Works Co. v. Martini.

*Damages for Creating a Nuisance.*

(Decided Nov. 23, 1911.   56 South 830.)

1. *Case; Nature of; Trespass.*—An action of trespass on the case, is devised to cover all cases where an actionable wrong exists for which no other remedy has been provided; it is based on the justice of the issues, and under it complete recovery may be had, for all the damages suffered as the proximite result of the wrong.

2. *Damages; Breach of Contract; Measure.*—Damages recoverable for the breach of the contract are such as are the natural proximate consequences of the breach, such as may be reasonably supposed to have been within the contemplation of the parties at the time of the making of the contract, as the probable result of its breach; this is true whether the action be in assumpsit for the breach or in trespass on the case.

[Birmingham Water Works Co. v. Martini.]

3. *Same; Torts; Measure.*—Damages recoverable for a tortious act not associated in any manner with a contract or its breach are the damages naturally and proximately caused by the wrong whether contemplated by the wrong doer or not.

4. *Same; Injury to Feeling.*—Injury to the feelings is an element of damage where there has been a physical injury to the person causing mental suffering, but generally speaking, damages for mental distress are not recoverable where a tort results in mere injury to property.

5. *Same; Injury to Real Estate; Measure.*—As a general rule, the measure of damages for permanent injury to real estate is the difference between the market value before and after the injury, together with such special damages as proximately and naturally resulted from the wrong.

6. *Same; Temporary Injuries.*—Where the injury to real estate is merely temporary, the general rule is that the measure of damages is the depreciation of the rental value during the time of the injury, together with any special damages proximately and naturally resulting from the wrong.

7. *Same; Private Nuisance; Injury to Feelings.*—A nuisance caused by pools of water formed in an owner's yard from water pipes used by a water company to supply customers with water, is not merely a nuisance affecting the value of the property, but a nuisance affecting the home of the owner who sustains injury from the odors and malarial emanations from the pool; and where the owner suffers physical annoyance as the result he can recover damages for injury to his feelings.

8. *Same.*—One who suffers physical injury from a nuisance may not recover for any mental suffering due to sickness of members of his family caused by the nuisance, but he may recover for loss of time incurred by him on that account, and expenses incurred, and the value of the services lost by him by reason of such sickness.

9. *Waters and Water Courses; Nuisance; Liability of Company.*—Under the facts in this case it is held that the water company was concerned in creating a nuisance by supplying water through defective pipes, and was liable for the injuries sustained.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by J. T. Martini against the Birmingham Water Works Company, for damages for nuisance. Judgment for plaintiff, and defendant appeals. Affirmed.

LONDON & FITTS, for appellant. After a discussion of the facts and the franchise appellant insists that if the municipal franchise of a water supply company provides that the service pipe in the street between the water

main and the premises of the consumer shall be laid and maintained by and at the expense of the consumer, and the water company has promulgated rules generally circulated and enforced which require that such service pipes be owned and kept in good repair by the consumer, and damage is occasioned to one who has signed the contract to be bound by such rules by leaks in such service pipe, the water company is not responsible.—*Fisher v. St. Joseph W. W. Co.* Mo. App. Oct. Term, 1910. The court erred in his oral charge as to mental suffering.—2 Maf. 1020; 3 Marf. 262; 6 Mayf. 248; 1 Sutherland on Damage, 278. The right to enforce section 23 of the franchise contract, and its reasonableness and validity is established by the following authorities taken from the note in 24 L. R. A. (N. S.) 485, et seq.

ALLEN & BELL, for appellee. The theory of appellee's case is well stated in the following cases.—*Ogletree v. McQuagg,* 67 Ala. 585; *E. E. & L. M. Co. v. Ross,* 95 Ala. 264; *Grady v. Wallsner,* 46 Ala. 381; *Whitfield v. Rogers,* 26 Miss. 84. The case is not made different because the plaintiff might have seen the construction made.—*Richards v. Daugherty,* 133 Ala. 570. One must so use his own as not to injure others.—*Fletcher v. Ryland,* L. R. I. Exc. 256. When a company brings an unnatural quantity of water upon his premises and discharges it upon the surface of the ground and it flooded the plaintiff's premises, the proximate damages may be recovered. —27 L. R. A. 294; 34 Pac. 756; 60 S. W. 902; 24 Pac. 989; 108 Mass. 261; 45 Ill. App. 285. The fact that others may be liable does not render the water company any the less liable.—*McCay v. L. & N.* 146 Ala. 333.

DE GRAFFENRIED, J.—This was an action of trespass on the case, brought by appellee against appellant,

for damages for maintaining a nuisance on the premises on which he resided.

1. The action of trespass on the case is a form of action devised by the law to cover all cases where an actionable wrong exists, for which no other remedy has been provided, and is based upon the mere justice and conscience of the case. As the system of equity was adopted to furnish a remedy for the enforcement of those controversies for which the law, on account of its inflexibility, furnishes no remedy, so the action of trespass on the case was created by the founders of the common law for the purpose of providing a full and complete remedy for those wrongs which, as the business and civilization of mankind expands, the law has provided no other method of redress. "The law doth give unto him *his* action upon *his* case, that he may recover *his* damages; and this action the law doth give unto him, for whensoever the law giveth anything, it giveth also a remedy for the same."—Coke upon Litt. vol. 1, p. 56a.

As it is the purpose of the law, as stated by Lord Coke, to furnish to each person a complete remedy for obtaining exact justice, under this form of action the party aggrieved, if entitled to recover at all, is entitled to a complete recovery for all damages suffered as a proximate result of the wrong, unless they are "so elusive and intangible and so easily simulated" that the law will not permit them to be considered as legal damages under the facts of the particular case.—*Western Union Telegraph Co. v. Westmoreland,* 151 Ala. 319, 44 South. 382.

In all actions for damages for the breach of a contract, the law is that the damages recoverable are such as were the natural and proximate consequences of the breach, and such as may reasonably be supposed to

have been within the contemplation of the parties at the time the contract was made, as a probable result of such breach, and *only* such damages. In some instances there are wrongs which grow out of a breach of a contract, and in which assumpsit and an action of trespass on the case are concurrent remedies. In such cases, says our Supreme Court, "the measure of damages cannot be altered in any substantial respect by the mere adoption of one form of action rather than another for the redress of the same grievance," and in such cases the damages recoverable are those which are the natural and proximate consequences of the breach, and such as may reasonably be supposed to have been within the contemplation of the parties as a consequence of the breach, when the contract was made.—*Western Union Telegraph Co. v. Westmoreland, supra.*

When, however, the action is for compensatory damages for a tortious act, disassociated from any matter of contract or its breach, then the question as to whether the particular element of damages was or was not within the contemplation of the wrongdoer when he committed the tort is irrelevant. In such case the injured party, if entitled to recover at all, is entitled to recover all of his actual damages proximately and naturally caused by the wrong, whether contemplated or not.—*Birmingham Water Works Co. v. Ferguson,* 164 Ala. 494, 51 South. 150; 13 Cyc. 28. "It is not necessary that the result of the injury should have been foreseen. A wrongdoer is responsible for the natural and proximate consequences of his misconduct, and not for such damages only as might reasonably be supposed to have been in the contemplation of the parties as a probable result of the tort. Where actual damages have been proved in an action for personal injuries, the

motive of the defendant will not be considered. It is sufficient if the injury complained of was the natural or proximate consequence of the wrongful act, and is not too remotely connected with the original injury complained of."—13 Cyc. 30.

2. Injury to the feelings—mental harassment—is an element of actual damages. "Wounding a man's feelings is as much an element of actual damages as breaking his limb."—*Head v. Georgia Pacific*, 79 Ga. 358, 7 S. E. 217, 11 Am. St. Rep. 434.

As a general rule, the law will not permit the recovery of damages for mental distress, where the tort results in mere injury to property. If the property is permanently injured, the true measure of damages, as a general rule, is the difference between the market value of the property before and after the injury; and if the injury is merely temporary the measure of damages, as a general rule, is the depreciation in the value of the hire or use or rent of the property during the period covered by the temporary injury. But, in addition to a recovery for the loss in the market value of the property or its rental value, as above stated, the plaintiff may, in such a case, recover any special or incidental damages which he may have suffered thereby, and which proximately and naturally resulted from the wrong, whether the injury was permanent or temporary.—*Eufaula v. Simmons*, 86 Ala. 515, 6 South. 47.

Where there has been a physical injury to a person, under circumstances warranting the recovery of compensatory damages therefor, mental suffering, which is a natural incident thereto, furnishes one of the elements of recoverable damages, and in such case the jury may always consider the element of mental suffering and award compensation therefor. The body and mind are

42 CA.

so closely connected that the mind is, of necessity, affected by any injury to the body.—8 A. & E. Ency. of Law, pp. 662, 663, 664. While there have been many instances in which the courts, in cases of simple negligence merely, because there was no physical injury, but where the circumstances showed great mental agony, have denied relief, they have universally allowed mental suffering to be considered as an element of damages in all cases where there is the slightest physical injury accompanied by circumstances showing mental distress. —*Warren v. Boston R. R. Co.*, 163 Mass. 484, 40 N. E. 895; 8 A. & E. Ency. of Law, p. 666.

3. In the present case the evidence tended to show that the appellee lived in Elyton, a suburb of Birmingham, and in a thickly settled neighborhood, and that he and his neighbors were supplied with water by appellant. The water was conducted down a street by means of a main pipe, and was carried from the main pipe into the residence and business lots supplied by appellant by means of service (½-inch) pipes. Water escaped and formed pools and ponds in appellee's yard. From these pools and ponds foul odors and malarial emanations arose, causing mosquitoes and creating sickness in appellee's family, and rendering his home undesirable as a place of residence. There was evidence in the case tending to show that the nuisance complained of was due to a hole or break in the main pipe, from which the water escaped. There was evidence, also, that there was *no* such break in the *main* pipe, but that the nuisance was due *entirely* to *three* of the *service* pipes, which were rotten and full of little holes, through which the water escaped, creating the condition which caused the appellee's damage. The above being the condition of the evidence, the appellant undertook to

relieve itself of responsibility by showing that *each* of its customers, *including* appellee, owned the *service* pipe by which water was supplied to him from the "main" pipe, and by special contract with appellant was under the duty of keeping *his* service pipe in repair at *his* expense; that one of the published and well-known rules of appellant was that it would not be liable for any damages caused by the breakage of a service pipe; and that appellee knew of this rule, and had agreed to be bound by it.

4. It was immaterial, so far as appellee is concerned, whether appellant owned the *three* service pipes or not. It was also immaterial whether it was the duty of appellant or of *their* owners to keep them in repair. Those matters were for appellant and the owners of the pipes to settle between themselves. Appellant was under no duty, if it did *not* own the service pipes, to furnish water from its main to any person whose service pipe was not in a fit condition to receive it. It *was* under a positive duty to so use its own property—and it owned the water—as not to injure appellee and his property. Neither was it material that under its rules it was not liable for damages caused by the breakage of a service pipe, and for that reason it is not necessary for us to pass upon the question as to the reasonableness and validity of that rule. Appellee's service pipe did not in *any way* contribute to the injury, and this suit was not brought to recover damages caused by the mere *breakage* of a service pipe. It was brought for damages caused by a *nuisance* created, according to appellant's theory, because it supplied water to three of its customers through *rotten* service pipes full of little holes, and which should have been kept in repair by their owners. The water was supplied in this way, not for an *hour* or a *day* or a *week*, but for such a period of time that it became a *nuisance*. "All persons concerned in the crea-

tion or commission of a nuisance are liable for the damages caused thereby, and where a nuisance is created by the joint act of several persons, an action for the entire damage may be brought against either or against all."—29 Cyc. 1205, subd. H, and authorities cited. "One who, by negligence or design, furnishes means and facilities for the commission of an injury to another which could not have been done without them is equally responsible with the wrongdoer, as all are regarded as principals in maintaining a nuisance."—20 Cyc. 1202.

The evidence tended to show that, while the water was standing on appellee's place, as above stated, "he and others made complaint to the Birmingham Waterworks Company of this condition, and were told by the company that the standing water was due to no leak in its pipes, and that it was in no way responsible for the condition; that it was not its business to fix the leaks causing the trouble; and that if parties making complaint wanted them fixed to fix them themselves." The evidence therefore tended to show that the appellant *knew* of the condition, but persisted in letting its water into the three service pipes with knowledge of the nuisance thereby created and continued. It therefore seems clear that the court committed no error in its rulings on the evidence in this case.

5. It is insisted by appellant that the injury complained of was merely an injury to property, and for that reason the appellee, not having been injured in his person, was entitled to nothing for mental harassment or pain, if, in reality, he suffered any. The nuisance complained of in this case was not merely a nuisance which affected the value of property. It affected the home, "a place designed as a shelter for appellee, and not merely an investment in real estate," valuable only for its rents and profits.—*Lyon v. Hardin,* 129 Ala. 643,

29 South. 777. Any condition which created annoyance and inconvenience to appellee while in his home was an offense against his *person*—a *personal* injury. A man who asphyxiates another with gas as surely commits an injury to the person as one who kills another with a bludgeon. One who with foul odors and mosquitoes renders a man's life unendurable in his home—who thus annoys and inconveniences him—as surely does him a personal injury as one who commits a battery upon him. Each is, in its way, a personal injury, and each necessarily is accompanied by mental harassment.

We quote the language of Mr. Justice Field, in the case of *Baltimore & P. R. Co. v. Fifth Baptist Church*, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739 : "The property might not be depreciated in its salable or market value, if the building had been entirely closed for the purposes for which it was designed, by the noise, smoke, and odors of the defendant's shops. It might then, perhaps, have brought in the market as great a price to be used for some other purpose. But the congregation had the same right to the comfortable enjoyment of its house for church purposes that a private gentleman has to the comfortable enjoyment of his home, and it is the discomfort and annoyance in its use for those purposes which is the primary consideration for allowing damages. As with a blow on the face, there may be no arithmetical rule for the estimate of damages. There is, however, an injury the extent of which the jury may measure."

In the instant case, as in the above case, there may have been no actual diminution of the rental or salable value of appellee's home. The extension by appellant of its water system into Elyton may have increased the value of the property, for purposes other than a home; but appellee was entitled to the comfortable enjoyment

of his home free from the malarial and unpleasant condition which some of the evidence in the case tends to show was unnecessarily created by appellant. It cannot be denied that for the *physical* annoyances and inconveniences suffered by appellee on account of the nuisance, he was entitled to damages at the hands of the jury. If he suffered *physical* annoyance, then, as a necessary corollary, he suffered mental harassment. There may exist mental annoyance or harassment without a corresponding physical disturbance. There cannot be physical annoyance without a corresponding mental harassment.

Appellee was not entitled to recover for any mental suffering which he may have endured because of the sickness of members of his family. He was entitled to recover for his loss of time in attending them during their sickness, doctor's bills incurred by him on that account, and the value of the service lost to him by reason of such sickness, but not on account of any mental distress that he may have suffered on account of such sickness.—*Bube v. Birmingham R. R. Co.*, 140 Ala. 276, 37 South. 285, 103 Am. St. Rep. 33; 29 Cyc. 1271, 1275; *Eufaula v. Simmons*, 86 Ala. 515, 6 South. 47. He was entitled to recover for any mental annoyance, harassment, discomfort, or pain that he suffered by reason of the physical annoyances and discomforts to which he was subjected during the period which caused this litigation.—*Houston, E. & W. T. Ry. Co. v. Reasonover et ux.*, 36 Tex. Civ. App. 274, 81 S. W. 329. We are therefore of the opinion that the court below committed no error in refusing to charge the jury, at the written request of the appellant, that appellee was not entitled to recover for mental distress.

We find no error in the record, and the judgment of the court below is affirmed.

Affirmed.