# Harrison *v.* Birmingham Water Works Company.

## *Failure to Furnish Water.*

(Decided December 16, 1913. 64 South. 164.)

1. *New Trial; Order Granting; Specifying Grounds.*—It is not improper for the court to grant an order for a new trial without specifying the particular ground upon which the court acted, although the motion contained several grounds.

2. *Same.*—A judgment granting a motion for new trial based on several grounds will not be disturbed. if justifiable on any of the grounds specified in the motion.

3. *Same; Evidence; Weight.*—The evidence examined and held to sustain the action of the court in setting aside a verdict for plaintiff and granting defendant a new trial in this case.

4. *Appeal and Error; Review; New Trial.*—A judgment granting a new trial on the facts will not be disturbed on appeal unless the evidence plainly and palpably supports the original verdict.

5. *Water and Water Courses; Private Consumers; Supply; Defective Pipe.*—Where consumers of water, jointly owning the service line connected with the main line of the water company, separately contracted with the water company for water through such service line into their respective branches, without any stipulation in the contract requiring the company to keep such line in repair,

if the common line or any of its branches leaks, and is unfit to receive water, none of the consumers can complain of the cutting off of the water from the whole line, although his particular individual branch is in repair. The same rule applies also to several tenants severally renting from one landlord separate houses on one service line owned by the landlord, but with separate branches, irrespective of the duty to repair as between the tenant and the landlord, since the company is not required to render itself liable to third persons as for a nuisance resulting from leaks, or to put a stop cock of its own on a defective branch pipe.

APPEAL from Jefferson Circuit Court.

Heard before Hon. JOHN C. PUGH.

Action by Mrs. P. G. Harrison against the Birmingham Water Works Company for damages for cutting off water. Judgment for plaintiff which was set aside on motion of defendant, and plaintiff appeals. Affirmed.

CLAUDE D. RITTER, for appellant. Counsel discusses the errors assigned and insists that the evidence supported the verdict and that the same was not contrary to the charge of the court; and that the court was in error in setting it aside, but he cites no authority in support of his contention.

LONDON & FITTS, for appellee. Under the cases of *Cobb v. Malone*, 92 Ala. 630, and *Martini's Case*, 2 Ala. App. 652, the court properly set aside the verdict and granted defendant a re-trial.

THOMAS, J.—The present is an appeal from the judgment of the lower court setting aside on motion a judgment there obtained by the appellant against the appellee, and granting to the latter a new trial.—Code, § 2846. The motion upon which the court granted the new trial contained four separate grounds, briefly stated as follows: That the verdict was contrary to the evidence; that the verdict was contrary to the law as charged by the court; that the jury, in rendering the verdict, disregarded the instructions of the court; and that the dam-

ages assessed by the jury were excessive. The court, as is usual, and as was proper, in granting the motion, did so generally, without specifying the particular grounds upon which it acted; and it is clear, therefore, that, if its action in granting the motion was justified on any ground named therein, the judgment setting aside the regular judgment should be affirmed.

The 'suit was against the defendant (appellee) water works company for breach of a contract in cutting off plaintiff's water supply. It is undisputed that the company was under contract with plaintiff to supply her house with water for three months prior and up to April 1, 1911, and that the water was cut off by it on March 21st at about 9 o'clock, and remained cut off until about 3 o'clock p. m. on March 23d. The real question of dispute in the case was as to whether or not the conditions of fact existed upon which the law would authorize or justify the defendant in cutting off the water.

In the case of *Birmingham Water Works Co. v. Martini*, 2 Ala. App. 652, 56 South. 830, where the waterworks company was sued in case for maintaining a nuisance, or for aiding in doing so, in that there was a leak in the pipes through which its water was being conducted in serving it to others than the plaintiff, whereby the water escaped from the pipes, and formed pools on plaintiff's premises, which were complained of as the nuisance, the court held that the defendant water company was liable to plaintiff for all damages proximately resulting from such pools of standing water, notwithstanding it appeared that the defendant did not own the pipes from which the water was leaking, and had no right and was under no duty to repair them, but was under contract with the owners of these pipes to furnish them water through these pipes, which the latter were to keep in repair. In discussing the defendant's liability for the nuisance resulting from the water escaping from these

pipes, whereby a third party, the plaintiff, was injured, the court said: "It was immaterial, so far as the plaintiff was concerned, whether the water company owned the three service pipes [from which the water was leaking] or not. It was also immaterial whether it was the duty of the water company or their owners to keep them in repair. Those matters were for the water company and the owners to settle between themselves. *The water company was under no duty if it did not own the service pipes, to furnish water from its main to any person whose service pipe was not in a fit condition to receive it,* but was under positive duty to so use its own property —and it owned the water—as not to injure the plaintiff or his property."

If, as there held, where the consumer owns the service line, and contracts with the water company to furnish water through that line, the duty rests on him, in the absence of stipulations to the contrary, to keep the line in fit condition to receive the water, and if, as there inferentially held, when he does not do so, he is in no position to complain of the cutting off of his water, then it must follow that, where the consumer owns the service line jointly with other consumers, all of whom have separately contracted under these conditions with the water company to furnish them water through that common line into their respective branches thereof, none of them can complain of the cutting off of the water from that line when the pipes of either the service line or any branch thereof have been permitted to get out of repair, and in a condition unfit to receive the water. If the common line leaks, then clearly none of the joint owners can complain of the cutting off of the water, for the duty is upon each of them, so far as the water company is concerned, of making the necessary repairs, and putting the pipe in condition; and if only one of the several branches from the common line, through which the

water is distributed individually and separately to the several consumers on the common line, should get out of condition and leak, although the branch belongs individually to that consumer, the water company has a right to cut the water off of the entire common line, and thereby deprive the other consumers on the common line, though their individual branches are in repair, of water, if the cutting off is necessary, without its fault, to avoid the creation or maintenance of a nuisance to property owners not connected with or interested in the common line. Each separate owner of a branch from the common line jointly owned by them all stands sponsor, so far as the waterworks company is concerned, in the absence of a stipulation to the contrary or conditions from which it would be implied, not only for the keeping in necessary repair of the common line, but for the keeping in repair of each branch thereof, at least to the extent of avoiding the creation or maintenance of a nuisance on such branch by the water which comes into it through the common line. If such branch is out of repair to this extent, certainly, it seems to us, no one of the joint owners of the common service line—although his own branch and the common line be in repair, and although as between such owners each be individually under duty to keep his branch in repair—can complain of the cutting off of his water by the water company when that is the only means within its control of preventing a nuisance. One theory of the evidence tends to show such a state of facts, and, if the proposition of law stated be not true, then we have this anomaly: The defendant is compelled by law to keep its contract to supply one of such joint owners (the plaintiff) with water, or, failing to do so, be mulcted in damages for a breach of such contract, when to keep such contract would necessitate either a liability for a nuisance, or, in order to prevent it, would necessitate the repairing by

defendant of a branch pipe, or the putting of a stopcock of its own on such branch pipe, when such pipe was the private property of another, over which defendant had no control, and which other was in partnership with plaintiff in the ownership of the common service line which fed such branch pipe. Under such a condition of the ownership of the pipes and of the stopcocks on them at the time of the making of the contract between plaintiff and defendant to supply the former with water, when the contract is silent as to who should suffer—plaintiff or defendant—for the failure of one of such joint owners to keep his branch pipe in repair, who is to suffer? It seems to us that, under such circumstances, it should be the plaintiff—whether the nuisance to be avoided by the cutting off of the water be a public or only a private one. She (the plaintiff), with the other joint owners, impliedly occupies a status with respect to the water company akin to that of partners, and, if the act of one occasions the necessity for cutting off the water from them all in order to avoid the creation of even a private nuisance to innocent persons, the other joint owners cannot, we think, maintain an action against the company for cutting off their water. Each of them had a right to build him an individual line to tap the main of the water company, and thereby get a supply of water, and be responsible and suffer only for his own acts in not keeping his pipe in repair; but where, through a desire to save expense, or from any other motive he chooses to join others in building a common line, he assumes the risk and burden of the consequences of the dereliction of his partners in keeping the common line and their several branches in repair.

The same principles, we think, are applicable to several tenants who severally rent from one landlord separate houses, all on one service line, but with separate branches to each house. As between them and their

[Harrison v. Birmingham Water Works Company.]

landlord, he may or not be under duty to keep the line and branches in repair, depending on the contract between them; but, as between them and the water company, with whom they have severally contracted to furnish them water through such line, they stand in the same position as the joint owners to whom we have adverted, in the absence of an agreement to the contrary, and, if one of them suffers his branch to get out of repair, so that a nuisance cannot be prevented except by cutting off the water from all, then the water company has a right to cut off the water from all, and is not liable to any of them therefor.

The court, in its oral charge to the jury, which appears to have been the only instruction given on the subject, in effect charged this to be the law as a logical deduction from what was decided in *Birmingham Water Works Co. v. Martini, supra,* from which we have hereinbefore quoted; nor is it here in any way questioned but what this is the law. We have adverted to it merely on account of a recent decision of our Supreme Court (*City of Montgomery v. Green,* 179 Ala. ......, 60 South. 900), which, on a superficial view, might be thought to be in conflict with these principles, but which we do not so understand.

The only question before us, as hereinbefore pointed out, is based on the assumption that the trial court properly charged the law, to which charge there was neither objection nor exception; it being contended here that it erred only as to a matter involving its judgment on the facts in setting aside the verdict of the jury. The rule governing us in reviewing the action of trial courts in this particular has been thus declared and often reaffirmed: "Decisions granting new trials will not be reversed, unless the evidence plainly and palpably supports the verdict" so set aside.—*Cobb v. Malone,* 92 Ala. 635, 9 South. 738. In the case at bar it is clear to us

that the evidence does not do so, and that the court properly set it aside, and granted the defendant water company a new trial.

It appears that plaintiff's premises, though leased by her and in her possession, belonged to another owner, and were on the same service line of pipes with three or four other houses owned by him, but which were also leased and in the possession of other tenants, respectively. This service line was put in by and was the property of the owner of all these houses, and it tapped at the street the water main, which belonged to the defendant water company. After leaving the main it branched off, so that one branch of the line—the first branch thereof—served plaintiff's house, and other branches served the other houses. Along this service line, at the junction of each branch thereof with the main service line, there was a cut-off or stopcock, whereby the water could be cut off of the particular branch on which it was without cutting it off from the other branches. Over this service line and these stopcocks, however, which were the property of another, as shown, the defendant had no control, and, if it should assume to cut off the water at one of these cocks, there was nothing to prevent the party on the branch of the line supplied through this cock, and thus cut off from such supply, from turning on the cock again, and letting the water in. However, at the point of the junction of the main service line with the water main in the street there was a stopcock which belonged to the defendant, and over which it had exclusive control, so arranged that, when defendant cut off the water at this point, it would remain cut off from the entire service line mentioned, and all the branches thereof, until defendant should turn it on again. The evidence for the defendant tended to show that there was a leak on one branch of this service line—the branch that fed house No. 1207, not plaintiff's—of such a character

as not only to cause a great.loss of water to defendant, who evidently was furnishing it on a flat-rate basis, but as was likely, if not stopped, to create, if not already constituting one, a nuisance to adjoining property owners; it then standing in pools under the particular house, and running out over other people's yards. Whereupon one of defendant's servants cut the water off at the cock on the service line, which fed the branch of that line on which was located this particular house as well as two others, but which cutting off did not in the least affect plaintiff's water supply, whose house, as said, was on a different branch of the service line—the first branch after the service line left the water main. Upon a subsequent inspection by another of defendant's servants, it was discovered that the water had been turned back on, either intentionally by some one or as a result of the defective condition of the cock, and that the pipe, not having in the least been repaired, was leaking as badly as ever. It was further ascertained that there were also leaks at plaintiff's house and at other points on the service line; whereby large quantities of water were being lost to the defendant. The defendant's servant, after notice given to the plaintiff and to the owner of the entire service line, cut the water off of the entire line at the stopcock of its own, located, as said, at the point of intersection of this service line with the water main, and which resulted, of course; in cutting off the water from plaintiff's premises.

This, as seen, and without dispute in the evidence, was the only means within defendant's control, and consequently the only sure and effective means it had of cutting off and of keeping cut off the water, and thereby of stopping the leaks, if any, and preventing, if there were such leaks, not only a great loss of water to itself, but of avoiding the creation or maintenance of a nuisance and a consequent liability therefor.—*Birmingham Wa-*

*ter Works Co. v. Martini, supra.* While the plaintiff, who was the only witness for herself on the subject of the leaks, denied positively the testimony of defendant's witnesses to the effect that there was a leak at her house, or on her branch of pipe, at the time of this cutting off of the water, or rather she claimed that these particular leaks had been repaired before the cutting off of the water, yet she did not deny the other leaks testified to by defendant's witnesses as being at said house No. 1207 and at other places on the service line. On the contrary, she admitted the leaks at house 1207, or rather admitted in effect the leaky condition of the pipes at that place as testified to by defendant's witnesses, but asserted that it was not leaking there at the time her water was cut off, not because the pipes had been repaired—this she did not contend—but because, she asserted, the water had not been turned back on at that place, as testified by defendant's witnesses, after it was first cut off at the private stopcock feeding the house. Her reasons for asserting that the water had not been turned back on are given, and these were that if the water had been turned back on, she would have seen it leaking at 1207, as her own house was so located that she could see under said house 1207. The fact that she did not see the water leaking there is not positive evidence that it was not leaking there, unless it be further shown, which was not done, that she was observing or observed to see. Such a statement as her's is mere negative evidence (*Pool v. Devers,* 30 Ala. 672) of a weak character, and not necessarily inconsistent with the positive evidence of defendant's witnesses that it was leaking there. Beyond all this, the trial court saw the witnesses on each side, heard them testify, and observed their tone and demeanor, their candor and lack of candor, and their convenient failure of memory, if

[Bridgeman v. Doss, et al.]

any (none of which is or can be exhibited to us on parchment) ; and consequently we require a stronger showing of fact than is here made before we would feel justified in disturbing its judgment.—*Cobb v. Malone,* 92 Ala. 630, 9 South. 738.

The judgment of the lower court granting a new trial is therefore affirmed.

Affirmed.