(76 South. 515)

## BIRMINGHAM WATERWORKS CO. v. BROOKS. (6 Div. 147.)

(Court of Appeals of Alabama. Dec. 19, 1916. Rehearing Denied Jan. 12, 1917.)

1. WATERS AND WATER COURSES ⊚⇒203(13)— PUBLIC WATER COMPANY — RIGHT OF CITIZEN.

The right of a citizen to be supplied with water by a public water company is qualified by the duty of the citizen to pay or tender the customary rents and provide the means of conveying the water from the mains to his property.

2. WATERS AND WATER COURSES ⊚⇒203(13)— PUBLIC WATER COMPANY—RIGHT OF CITIZEN.

Plaintiff had no right to be supplied with water through a joint service pipe, when the other users who would also be supplied were in arrears with their water rent and on demand had refused to pay.

3. WATERS AND WATER COURSES ⊚⇒203(13)— PUBLIC WATER COMPANY—RIGHT OF CITIZEN.

If the claim for water rent was not justly due, a demand therefor would afford no excuse for a refusal to supply water.

4. WATERS AND WATER COURSES ⊚⇒203(13)— FAILURE TO SUPPLY WATER—EXCUSE.

Where plaintiff and her landlord were supplied through a joint service pipe, she was liable for the entire water rent where the landlord failed to pay; and her failure to pay would be a legal excuse for failure to supply water.

5. PLEADING ⊚⇒8(12)—CONCLUSIONS.

A plea alleging "that plaintiff, when she made application for water supply, refused to pay the sum which defendant had a legal right to demand of her, and which it did so demand before plaintiff was entitled to receive such water supply," was a mere conclusion of the pleader.

6. PLEADING ⊚⇒208 — DEMURRER — DEFECTS NOT SPECIFIED.

Although a plea did not aver that a demand was made on the landlord for the water rent due, etc., where such objection was not made by the demurrer, it was error to sustain the demurrer for such defect, in view of Code 1907, § 5340, providing that no objection can be allowed or taken which is not distinctly stated in the demurrer.

7. WATERS AND WATER COURSES ⊚⇒203(13)— PUBLIC WATER COMPANY—DUTY TO SUPPLY.

Defendant water company was under no duty to furnish plaintiff with water through a joint service pipe, upon tender by her of the usual amount charged for the house she occupied, if at the same time it would be compelled to furnish her landlord water under a contract which had been breached by failure to pay water rent on demand.

8. CONTRACTS ⊚⇒188—PARTIES BOUND.

One not a party to the contract set up in the plea, and having no rights thereunder, was not liable for the debt arising out of the contract.

9. DAMAGES ⊚⇒91(1)—EXEMPLARY DAMAGES.

It is not necessary to the awarding of exemplary damages that the plaintiff show wantonness or willfulness; it being sufficient if the commission of the tort is attended with circumstances of aggravation.

10. WATERS AND WATER COURSES ⊚⇒203(13) — WATER SUPPLY — REFUSAL TO FURNISH — EXEMPLARY DAMAGES—PLEADING.

Although plaintiff's complaint for wrongful refusal to furnish water declared on simple negligence, where it stated the facts under which the alleged tort was committed, exemplary damages might be awarded.

Appeal from City Court of Birmingham; Charles W. Ferguson, Judge.

Action by Carrie Brooks against the Birmingham Waterworks Company for damages for failure to supply water. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

For opinion in Supreme Court, denying certiorari, see Ex parte Brooks, 200 Ala. 697, 76 South. 995.

The complaint alleges a negligent and wrongful refusal of defendant to furnish plaintiff water at her residence, and consequent damage. The second count is the

same as the first, except that it alleges willful, wanton, or negligent failure. The following were defendant's pleas:

(3) Defendant ran its main or mains through the streets of the city of Birmingham. The water was furnished to the consumers by service pipes running from said main or mains to the house or houses of the consumer; and defendant avers that a connection had been made with its said main or mains for two adjoining tenant houses, owned by one Gingold, by means of one service pipe running from said main to the premises on which said houses were located, and said houses, prior to the time plaintiff became the occupant of one of said houses, which were then owned by said Gingold, were furnished by defendant with water through said service pipe; and defendant further avers that the rent for said water became justly due from the owner of said houses to defendant for the sum of, to wit, $11.25, and that the owner of said premises wholly failed to pay said sum. Defendant further avers that for this reason it thereafter cut off the water supplied through said pipes to said houses, and that the water was cut off for said reason at the time plaintiff applied for water at one of said houses owned by said Gingold; and defendant further avers that, at the time said application was made, said sum due on said house was wholly unpaid, and plaintiff wholly failed to pay said sum, or to provide a separate service pipe to the house for which water was supplied.

(4) That at the time plaintiff moved into the house aforesaid, and made application for water, said house and adjoining house were owned by one Gingold, the landlord of plaintiff, and that both of said houses were supplied on the application of said Gingold, through one service pipe; and defendant avers that at the time plaintiff made her application for such service there was then due from Gingold, and justly due to this defendant, the sum of $11.45 for water served to said houses through said common service pipe by this defendant; and defendant avers that at such time it had adopted the following rule, viz.: "In case two or more parties are supplied through one service pipe, if either of said parties fail to pay the water rent when due, or if either violate any rule of the company, the water may be turned off the premises until the rent is paid or the rule complied with." Defendant avers that said rule is a reasonable regulation, and that in compliance therewith, when plaintiff made application for such water, it informed plaintiff that there was due such sum of $11.45 for such water rent, and advised plaintiff that said water had been turned off on account of the nonpayment of such water rent, and would not be turned on through such common service pipe until such rent was paid; and defendant further avers that plaintiff refused to pay such water rent, and that same has not been paid or offered to this defendant. Wherefore defendant declined to furnish plaintiff water at said place, as it had a right to do.

(7) At the time plaintiff made application to defendant for water service at the house described in her complaint, said house was one of two tenement houses owned by Sam C. Gingold, and said houses were located in that part of the city of Birmingham which was formerly included in the limits of the city of Ensley. Defendant avers that both of said houses were supplied by a common service pipe, which had been placed for the purpose of supplying said houses by the owner, and which was not the property of defendant. Defendant further avers that neither of said tenement houses, which were adjoining houses, had a separate connection for a water supply from defendant's main. Wherefore defendant avers that under the contract with the city, which was in force at the time plaintiff made application for such water, and

which has been in force from said time until the present time, and is now in force, the plaintiff, who was a tenant in one of said houses, and not the owner thereof, could not require of defendant that it supply her with water, but the right to require defendant to supply this house with water was given by said contract to the owner of said tenement houses, and the adjoining tenement houses which were supplied by the same service, provided said owner would assume the payment for the entire service due both houses.

(5) That at the time plaintiff moved into said house same was one of two or more tenement houses which were then owned by one Gingold, who was the landlord of plaintiff, and said tenement houses were adjoining each other; and defendant avers that in the contract then in force between the city of Birmingham and this defendant, and which was the contract under which this defendant was then operating, and the only contract under which this plaintiff was entitled to be furnished a water supply, it is provided as follows: "Each building or dwelling house shall have a separate service pipe, except in cases where two or more tenant houses are adjoining each other, and owned by one person, who will pay for water services for the entire premises." And defendant further avers that said tenement house occupied by said plaintiff did not have a separate service pipe; but it, together with the adjoining tenement house, was served by a common service pipe, and said Gingold, who owned the said two adjoining tenement houses, would not pay, and refused to pay, for water services for the entire premises.

(6) Same as 5, with this added averment: Defendant further avers that, at time plaintiff made application for such water supply, there was then due from said Gingold, the owner of said tenement houses, to this defendant, the sum of $11.45, for water which had been furnished by this defendant to said houses through said common service pipe; and defendant avers that both said Gingold and this plaintiff refused to pay such sum, although demand was made therefor, and said sum was justly due.

(9) That plaintiff, when she made such application for water supply, refused to pay the sum which defendant had a legal right to demand of her, and which it did so demand before plaintiff was entitled to receive such water supply.

Plea 8 is similar to the other pleas, except that it sets up that the adjoining tenement house was occupied, and had been occupied for two years without a vacancy, by one Marie O'Conner, and that there was due from Gingold for water supply for the two houses the sum of $11.45, and that plaintiff refused to pay same, and was informed by defendant that if she would pay said arrears, and would assume the payments for the quarter for which she then desired water for the entire service pipe, that the water supply would be furnished her, or that if she would make connection, or have connections made, from the house in which she had moved, with defendant's main, which would be separate from the other house, that water would be furnished her without requiring the payment of the other bill; and defendant avers that plaintiff refused to pay said arrears, or to make such separate connection, wherefore service was refused.

Percy, Benners & Burr, of Birmingham, for appellant. Silberman & Hoskins, of Birmingham, for appellee.

BROWN, J. [1] Whether the duty of the water company to supply appellee with water arises out of the nature of its business, as one affected with public interest, or out of a contract subsisting between the city of Birmingham and the water company, it is qualified by the duty of appellee to provide a proper service pipe to convey the water from the main to the premises; this because the water company has no right, in the absence of contract, to lay such service pipe on private property. Otherwise stated, the right of the citizen to be supplied with water by a public water company is qualified by the duty of the citizen to pay or tender the customary rents and provide the means of conveying the water from the water mains onto his property. Therefore, if the service pipe through which appellee demanded that the defendant furnish her with water was used by others than appellee, and if, in supplying appellee through this pipe, the water company would be compelled to supply others without compensation, it had a legal right to refuse to supply appellee through such pipe, on the ground that appellee had not provided a proper service pipe through which she could be supplied by the company without loss.

[2] No duty rested upon appellee to pay the debt of another, unless the appellee was a user of water supplied through the joint service pipe at the time the rent in arrears accrued; and being under no duty to pay such debt, its existence afforded no excuse for the water company to refuse to supply her with water through such pipe, unless in doing so the person in arrears would also be supplied. Otherwise stated, appellee had no right to be supplied with water through a joint service pipe, when the other users were in arrears with their water rent, and on demand had refused to pay rents which were justly due.

[3] Of course, if the claim for such rent was not justly due, but had arisen on false measurements, the existence of such demand would afford no excuse to the water company. City of Montgomery v. Greene et al., 180 Ala. 322, 60 South. 900.

[4] If, however, water was supplied to appellee and another through a joint service pipe, although appellee paid her just proportion of the rent, and the other party refused to pay on demand being made therefor, on account of the relation of the appellee and such defaulter, the law imposes on her responsibility for the entire debt; and if such debt was justly due, and she failed to pay, this would be a legal excuse for refusing to supply her with water. Harrison v. Birmingham Waterworks Co., 9 Ala. App. 605, 64 South. 164.

When these principles are applied to the defendant's several special pleas, we find that pleas 3, 4, and 7 do not show that plaintiff was a user of water supplied through the alleged joint service pipe when the alleged debt accrued, or that in supplying plaintiff, another, who was in arrears for water rent, and who after demand had refused to pay, would be supplied. Pleas 5 and 6 do not show that the tenement house other than the one used by the plaintiff was occupied.

[5] Plea 9 is subject to the vice of stating the mere conclusion of the pleader. Donaldson v. Roberson, 15 Ala. App. 354, 73 South. 223.

[6] While plea 8 does not aver that demand was made on Gingold for the water rent overdue and unpaid, and a failure or refusal to pay same, this objection was not made by the demurrer, and the plea was not subject to demurrer assigned, and the court erred in sustaining the demurrer. Code 1907, § 5340.

[7] The defendant was under no duty to furnish plaintiff with water through the joint service pipe, upon tender by her of the usual amount charged for the house she occupied, if, at the same time, defendant would be compelled to furnish Gingold, or his tenant, O'Conner, under the contract which had been breached by a failure to pay on demand the water rent due.

[8] Marie O'Conner was not a party to the contract set up in the plea, and had no rights thereunder, and was not liable for the debt arising out of that contract. Birmingham Water Co. v. Keiley, 2 Ala. App. 629, 56 South. 838; Burke v. City of Water Valley, 87 Miss. 732, 40 South. 820, 112 Am. St. Rep. 468; Turner v. Revere Water Co., 171 Mass. 329, 50 N. E. 634, 40 L. R. A. 657, 68 Am. St. Rep. 432.

The question argued in brief on the application for rehearing as to the right of the plaintiff, upon tender of the usual sum of money required to pay the water rents for supplying both houses with water through the joint service pipe, is not within the issues presented by the pleadings, and upon this question we express no opinion.

The uniform holding of the Supreme Court is that exemplary damages are not classed as special damages, and need not be specially claimed to authorize the imposition of such damages, and, although not specially claimed, if the evidence shows that the tort was committed wantonly or willfully, or with circumstances of aggravation, such damages may be awarded. A. G. S. R. R. Co. v. Arnold, 84 Ala. 169, 4 South. 359, 5 Am. St. Rep. 354; Snedecor v. Pope, 143 Ala. 275, 39 South. 318; Wilkinson v. Searcy, 76 Ala. 176; South & N. A. R. Co. v. McLendon, 63 Ala. 266; A. G. S. R. Co. v. Sellers, 93 Ala. 9, 9 South. 375, 30 Am. St. Rep. 17; Hughes v. Anderson, 68 Ala. 280, 44 Am. Rep. 147; Patterson v. S. & N. A. R. R. Co., 89 Ala. 318, 7 South. 437; R. & D. R. R. Co. v. Vance, 93 Ala. 144, 9 South. 574, 30 Am. St. Rep. 41; Anniston Pipe Works v. Dickey, 93 Ala. 418, 9 South. 720; Cook v. South. Ry. Co., 153 Ala. 119, 45 South. 156; Sparks v. McCreary, 156 Ala. 382, 47 South. 332, 22 L. R. A. (N. S.) 1224; Johnson v. Collier, 161 Ala. 204, 49 South. 761; Birmingham Water

Co. v. Keiley, supra; Black v. Hankins, 6 Ala. App. 512, 60 South. 441; N., C. & St. L. Ry. v. Blackmon, 7 Ala. App. 530, 61 South. 468.

[9] From these authorities it is manifest that it is not necessary to the awarding of exemplary damages that the plaintiff show wantonness or willfulness in the commission of the tort; but such damages may be awarded, if the commission of the tort is attended with circumstances of aggravation, and therefore may be awarded in a case involving a charge only of simple negligence. In the case of L. & N. R. R. Co. v. Markee, 103 Ala. 160, 15 South. 511, 49 Am. St. Rep. 21, cited as supporting the rule announced in Bowles v. Lowery, 5 Ala. App. 555, 59 South. 696, the court was not considering the question of exemplary damages, but the question as to whether evidence of willful or wanton injury would sustain a count charging simple negligence as a basis for the cause of action.

If it be conceded that L. & N. R. R. Co. v. Markee does not support the holding in Bowles v. Lowery, the latter case has been cited with approval and followed by the Supreme Court in the recent case of Roach v. Wright, 195 Ala. 333, 70 South. 271.

[10] "As a general rule of pleading, it is not necessary to claim exemplary damages by name, it being sufficient if the facts alleged and proof be such as to warrant their assessment." 8 R. C. L. p. 626, § 169. That the complaint in this case, though declaring on simple negligence, by stating the facts under which the alleged tort was committed, brings the case within the general rule, and under it exemplary or punitive damages may be awarded. A. G. S. R. R. Co. v. Arnold, supra; Birmingham Water Co. v. Keiley, supra.

For the error pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.