163 So. 626

## ALABAMA WATER SERVICE CO. v. WAKEFIELD.

### 6 Div. 791.

Supreme Court of Alabama.

Oct. 17, 1935.

Coleman D. Shepherd, of Birmingham, for appellant.

114

Pennington & Tweedy, of Jasper, for appellee.

BOULDIN, Justice.

The action is in tort for alleged wrongfully cutting off water service to a customer.

Plaintiff and defendant, a public service company, had, some years prior to the act complained of, entered into the preliminary contractual relations prescribed by the Public Service Commission, entitling plaintiff to water service at his mercantile store in the town of Carbon Hill at a minimum rate of $1.50 per month, with charge of 50 cents per thousand gallons for all water consumed in excess of 2,000 gallons per month.

It appears bills were presented and duly paid at the minimum rate until September 1, 1933, when the water company presented a bill for $25.75, covering a claim for 48,500 gallons of excess water consumed or wasted during the month of August, with the minimum charge, $1.50, payable in advance for the month of September.

Plaintiff denied liability for any excess, and refused to pay other than the minimum. Water service was, after notice, cut off October 6th, and this suit followed.

Count one of the complaint charged the act of cutting off the water supply was a wanton wrong.

One question presented on appeal is whether this count was properly submitted to the jury on the evidence.

It appears the water supply was to furnish drinking water for plaintiff, his employees, and customers at the store, for a toilet with lavatory and commode for use

of the same persons, and for watering fowls, mainly chickens, handled as a part of the business, washing coops, etc.

The issue of wantonness, vel non, turns on evidence of waste of this large volume of water through defective flushing parts in the toilet. The local manager, whose reports of meter readings at the time and prior thereto furnished the basis of the claim for excess water, testifies to such readings, and to a personal discovery of waste in large volume through defects in the flushing appliances of the toilet, a condition which it appears would render the toilet unusable.

Plaintiff and witnesses deny any such waste. All purport to speak of their actual knowledge.

There is irreconcilable conflict. Some one is perpetrating a wrong on the other. Its solution was for the jury. If the claims of the local manager were knowingly false, and, acting within the line and scope of his employment, he caused his company to cut off the water supply because of such false report, the jury would be warranted in finding a wanton wrong was perpetrated on the customer for which the company was liable.

That the district manager, on the basis of such report, and after testing the accuracy of the meter, was acting in good faith, would not change the situation. If there was a direct causal connection between a fabricated report of an employee, acting within the line and scope of his employment, and the wrongful act of cutting off the water, the company may be liable for a wanton wrong under the doctrine of respondeat superior.

We do not mean to intimate any views on the weight of the evidence, pro or con, on this issue. We do hold the evidence made a case for the jury on the wanton count.

The court, by various rulings, submitted to the jury as an element of actual damages, any "humiliation and embarrassment" suffered by plaintiff as a proximate result of the wrong complained of.

Appellant, in presenting this assignment of error, insists that, while the action is in form ex delicto, it grows out of a contract to supply water, and the recoverable damages are the same as in an action of assumpsit for breach of contract.

This rule has been announced as applicable to some cases. Western Union Telegraph Co. v. Westmoreland, 151 Ala. 319, 44 So. 382.

Assuming for the moment that such rule is applicable, the damages recoverable for breach of contract are such as naturally and proximately result from the breach; such as are reasonably supposed to be in the contemplation of the parties when entering into the contract.

The subject-matter of the contract has much to do with the elements of damages recoverable under such rule. Where the subject-matter is such that a breach will naturally and proximately subject the other party to inconvenience, discomfort, exposure, hazard to health of self and family, the mental distress or pain which naturally follows and accompanies the physical imposition and hurt are recoverable elements of actual damages. F. Becker Asphaltum Roofing Co. et al. v. Murphy, 224 Ala. 655, 141 So. 630; Becker Roofing Co. v. Pike, 230 Ala. 289, 160 So. 692.

The obligation of a public water company, furnishing a prime necessity, and holding a practical monopoly in cities and towns, does not rest alone on the basis of a private contract.

The regulation of the Public Service Commission requiring a contractual relation between company and customer to be entered into as an initial step to obtain water service is for an orderly conduct of the business. When such regulation is complied with, the service installed, and the customer meets his obligations under the regulations from time to time, the duty of furnishing service is a public duty, a law-made duty, a breach of which is a tort, wherein the measure of damages is governed by the rules of tort actions. Alabama Water Service Co. v. Harris, 221 Ala. 516, 129 So. 5; Alabama Water Co. v. Knowles, 220 Ala. 61, 124 So. 96; Birmingham Water Works Co. v. Martini, 2 Ala. App. 652, 56 So. 830; Birmingham Waterworks Co. v. Davis, 16 Ala. App. 333, 77 So. 927; Birmingham Water Works Company v. Keiley, 2 Ala. App. 629, 56 So. 838; Sims v. Alabama Water Co., 205 Ala. 378, 87 So. 688, 28 A. L. R. 461; 67 C. J. 1272, 1273.

It is settled law in Alabama that "inconvenience and annoyance" constitute

proper elements of damages in actions of this sort. Alabama Water Co. v. Knowles, 220 Ala. 61, 124 So. 96, 103; Birmingham Water Works Co. v. Watley, 192 Ala. 520, 68 So. 330; Birmingham Water Works Co. v. Ferguson, 164 Ala. 494, 51 So. 150; Birmingham Water Works Co. v. Vinter, 164 Ala. 490, 51 So. 356.

The first two cases just cited were in tort; the latter two were in assumpsit. In these latter cases, announcing the general rule that damages for mental distress are not recoverable in actions of assumpsit, "annoyance" was treated in its connection as in the nature of a physical hurt. We need not here seek to draw distinctions or analogies between these cases and the Becker Roofing Co. Cases, heretofore cited, as well as other exceptional cases cited in Jefferson County Burial Soc. v. Scott, 226 Ala. 556, 147 So. 634.

Conceding that "embarrassment and humiliation" are of the class of wounded feelings included in the general term "mental distress or pain," we are impressed that in an action of tort for wrongfully cutting off water service, wherein there is evidence of inconvenience, enforced labor or expense in supplying water, discomfort in loss of toilet facilities and the like, "embarrassment and humiliation" are so related to the physical hurt, covered by the phrase "inconvenience and annoyance" as to be matter for the jury's consideration. Certainly "annoyance" as addressed to a jury, would, in a measure, include a feeling of imposition and oppression, discrimination against the plaintiff as unworthy a common service due to all on complying with the lawful regulations, which he had done under the finding of the jury. Authorities supra. Also, City of Birmingham v. Greer, 220 Ala. 678, 126 So. 859.

Appellant complains of the refusal of written charges instructing the jury that no recovery could be had for "injury to business." This was one of the specifications of damages.

The insistence is this in effect submitted to the jury the matter of lost profits as an element of damages.

It is properly conceded by appellee that the evidence was insufficient to establish any definite or reasonably certain loss of profits as the proximate result of cutting off the water supply. Some evidence was received tending to show a specified profit in the poultry business, chickens and eggs, during preceding months, but further evidence showed the volume of business depended much on the operation of a truck gathering up poultry in the surrounding section, which was not kept up after the water was cut off. Other factors were not shown to be the same after October 6th.

But appellee insists "injury to business" is not the same as lost profits.

Obviously, injury to a going business may arise from depriving the party of facilities for its operation, or putting an extra burden of labor and expense upon its operation, although no definite loss of profits can be shown.

The trial court instructed the jury thus: "* * * you should not consider any element of damages for loss of good will or loss of customers or for inability to compete successfully with other grocers and merchants in the town, but if the plaintiff is entitled to recover and if the evidence in the case reasonably satisfies you that as a proximate result of the wrongfulness or wantonness in the cutting off of the water that he was embarrassed, humiliated or harassed, or inconvenienced and put to much expense in obtaining water for use in his business house or store and forced to bring water from other places to the store, then you could assess such damages for those things as the evidence reasonably satisfies you he sustained as a proximate result of the wrongful or wanton cutting off of the water. Now, then, that would be the measure of damages if he recovered under count 2, which charges a wrongful cutting off of the water."

There was evidence that the plaintiff and his employees did, several times each day, bring water from plaintiff's residence some three blocks away, and sometimes from a nearer hydrant of a neighbor; that this was necessary to provide drinking water, and particularly to supply water for the fowls and washing coops.

We are impressed from the wording of the court's charge that this expense and labor were considered within the expression "injury to business," and the effect of the charge is to limit a recovery to the items named in above quotation, expressly eliminating the items named in the complaint on which profits would depend. The charges refused were misleading as applied to this case.

Finally, appellant insists there was error in refusing defendant's written charges 43 and 44.

The effect of such charges would be to limit recovery for carrying water, etc., to the labor of plaintiff in person. The evidence does show no extra pay was given employees for this service. But this is not the test.

The employee's time is the employer's time. When paid for, he is entitled to such time in the service for which he is engaged. If forced to divert his services to other ends as a result of the wrongful act of another, the employer may recover proportionately as if it were his own time and labor.

We find no error to reverse.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.