270 So.2d 81

**Ruby B. HAMNER**

v.

**D. G. BRADLEY.**

**6 Div. 851–A.**

Supreme Court of Alabama.

Sept. 7, 1972.

Rehearing Denied Nov. 22, 1972.

Henley & Northington, Northport, for appellant.

COLEMAN, Justice.

Plaintiff appeals from a voluntary nonsuit induced by the ruling of the trial court sustaining defendant's demurrer to the complaint. The question for decision is whether the complaint states a cause of action.

The substance of count one is as follows: Defendant is employed by an insurance company. In 1967, plaintiff applied for a hospitalization insurance policy which was issued under date of November 2, 1967. The insurer paid a prior claim without questioning coverage under the policy.

Plaintiff was hospitalized in July, 1969. Expenses for her treatment were covered by the policy. About July 31, 1969, plaintiff applied for benefits due her under the policy. On September 4, 1969, defendant came to plaintiff's home concerning plaintiff's claim. Plaintiff alleges that defendant:

". . . . began to deny the said claim of the Plaintiff and without provocation, he used towards plaintiff certain insulting, rough and abusive language,

and talked in a threatening and obnoxious tone of voice, stating to her among other things, as follows, viz:

"4:02. 'I just came to tell you that your premiums weren't going to be paid any on them and they are going to cancel your insurance.'

"4:03. 'I will write you a receipt of what premiums you have paid.'

"4:04. 'You must have told story to get policy because you had a hysterectomy and an appendectomy before you applied for the policy with us.'

"4:05. 'You have been treated for high blood pressure and I don't know why you told a story and got the policy.'

"4:06. 'You told a story to get this insurance and you have been treated for these things and high blood pressure.'

"4:07. 'I have been to Dr. Cone's and saw your chart.'"

Defendant's tone of voice was rough and high. He insinuated that she was a liar when she told the agent that she did not have high blood pressure and had never had an appendectomy or hysterectomy. Defendant meant to wilfully and maliciously falsely imply that plaintiff had falsely and fraudulently applied for insurance "with the defendant," and that plaintiff made such false representations with actual intent to deceive "the defendant" into issuing her a policy, and defendant charged plaintiff with such fraud and deceit in making application for the policy.

Plaintiff denied to defendant that she had given "said agent" any false information on said application, and she requested defendant to see her doctor who treated and examined her on prior occasions.

Defendant then and there knew of her sensitive and serious condition and that she was still recovering from her operation and illness. In complete disregard of this

and, without legal cause or just excuse, he continued to berate and question plaintiff about twenty minutes in a rough, high voice; and he continued to insinuate that plaintiff had lied to defendant in her application for the policy.

Plaintiff avers that defendant's "allegations" were without any foundation in fact, and that plaintiff has never had an appendectomy or hysterectomy, and, if she had ever suffered from high blood pressure, she never knew it, "and in fact, she had not suffered from any significant high blood pressure."

Plaintiff avers that, as a direct and proximate consequence ". . . . of the said actions . . . ." of defendant, she suffered the following injuries, viz.: she became nauseous, faint, suffered stomach upset; her digestive system or kidneys became upset; she suffered mental and physical anguish; she was unable to rest or sleep, her mental and physical condition was aggravated, worsened and her recovery was prolonged; she was vexed, worried, and became very nervous, scared, frightened, and excited; she became dizzy; her eyes became bleary and felt like they had a skim over them; her legs and knees hurt and her heart beat faster.

In substance, count two is to the same effect as count one.

■ Plaintiff summarizes her contentions as follows:

"Finally, the plaintiff submits that the gravaman of her complaint is that she was entitled to the quiet, peaceful enjoyment of her home, and that when the defendant came into her home and called her a liar and told her that they were not going to pay the policy and threatened to cancel it, and charged the plaintiff with fraud in making application for the policy, coupled with the fact that the plaintiff was recovering from an operation for her illness and he knew it, *his words alone were an actionable tort.*" (Emphasis Supplied)

To support this contention, plaintiff strongly relies on Engle v. Simmons, 148 Ala. 92, 41 So. 1023, wherein this court held that the complaint stated a cause of action and that the trial court had erred in sustaining demurrer to the complaint.[1] This court said:

". . . . Does the complaint as amended state a cause of action? It is a sound and just principle of law that, where one in violation of the law does an act which in its consequences is injurious to another, he is liable for the damages caused by such wrongful act.— Van Norden v. Robinson, 45 Hun (N.Y.) 567. The allegations of the complaint show that the defendant entered into the dwelling house of the plaintiff, who was at the time far advanced in pregnancy, and in the absence of her husband, and with the evident purpose of collecting a claim against the husband, after being informed by the plaintiff that her husband was absent from home, and after having been requested by plaintiff to leave the premises, he refused without legal cause or good excuse to do so, persisting in interrogating the plaintiff and in taking an inventory of her household effects, making at the time threats of what he intended to do, whereby the plaintiff was thrown into a state of nervous excitement, bringing on labor pains attended with unusual severity continuing for three days, and resulting in the premature birth of a child, and causing a physical disability to the plaintiff which for a long time incapacitated her for the discharge of her household duties. That the defendant violated the law in his refusal to immediately leave the premises when ordered to do so, there can be no question, and that his subsequent conduct as alleged was wrongful is equally certain. The action was properly brought in the name of the wife.—§§ 2523, 2527, Code 1896. The suit is for an injury to the plaintiff, and not for a trespass to the realty as supposed by appellee. It is wholly immaterial under the circumstances alleged whether the ownership of the premises was in the plaintiff or her husband, although it is averred that the possession

1. The record in *Engle* shows that Count Three recites as follows:

"Plaintiff claims of defendant $3000.00, as damages, for this: On or about November 20, 1901, defendant came into the residence occupied by plaintiff and her husband, and in which they were in possession under a lease by plaintiff, accompanied by J. T. Mote, Esq., whom plaintiff knew to be on unfriendly terms with her husband, and proceeded to make various and divers inquiries regarding plaintiff's husband and property owned by plaintiff and her husband; that, in reply to said questions, plaintiff informed defendant that her husband was not at home, and then told him to immediately leave the house, informing him that she was not well, but defendant refused to leave, as requested; that defendant, then and there, and after being ordered to leave the house as aforesaid, made many inquiries regarding the property claimed by plaintiff, taking a list on inventory of the same, and telling plaintiff in a threatening manner he was going to bring suit against her husband and take plaintiff's property to satisfy his claim against her husband, for he intended to procure witnesses to swear that her property was the property of her husband; that, at this time, plaintiff was far advanced in pregnancy, and, because of said acts and conduct of defendant, plaintiff became nervous and excited, being apprehensive that she should lose her property and fearful that defendant and said J. T. Mote were going to harm her husband by doing him physical violence; that plaintiff immediately became violently sick and suffered from labor pains, said pains and sickness continuing for several days and until she gave birth to a child; that said childbirth was accompanied by unusually severe and violent pains, plaintiff remaining sick and suffering great physical and mental pain for several weeks thereafter, during all of which time plaintiff was unable to attend to her household affairs without much physical discomfort, and plaintiff's health still remains impaired, —all to plaintiff's damage as aforesaid.

"Plaintiff avers that said nervousness, excitement and unusual and violent sickness and pain was occasioned by the herein before alleged acts and conduct of defendant."

of the dwelling was held under a contract of lease made by the wife. In Watson v. Dilts, [116] (Iowa) [249,] 89 N.W. 1068, 57 L.R.A. [559,] 561, 93 Am.St.Rep. 239, it was said: 'Nor does it matter, in our judgment, that the trespass was committed on property belonging to the husband. It was her home as well as that of her husband, and any unlawful entry or invasion thereof which produced physical injury to her was a wrong for which she ought to recover.' " (148 Ala. at 94, 95, 41 So. at 1023)

As this court has stated, *Engle* is bottomed on the traditional tort of trespass.

"Our cases which have allowed recovery for physical injuries with accompanying mental pain or emotional disturbance caused by the intentional use of insulting or abusive language are all bottomed on some traditional tort. In Engle v. Simmons, 148 Ala. 92, 41 So. 1023, 7 L.R.A.,N.S., 96, decision was rested on the rationale that the injury to the wife by the use of such language in her home was the natural and probable result of the unlawful trespass to the home. Others of our cases which allow recovery are the ones against those engaged in public business and involve a violation of a duty arising out of contractual relation, such as the carrier and passenger cases and the innkeeper and guest cases. But those cases, of course, are distinguishable from the one at bar." Ex parte Hammett, 259 Ala. 240, 242, 243, 66 So.2d 600, 602.

The cases cited by this court in *Engle* in support of the decision clearly show that in each of them it was alleged that defendant had committed a trespass against property or a person or both.

In Watson v. Dilts, supra, it is said that the petition alleged that, at 11 p. m., after plaintiff and her family had gone to bed, defendant wrongfully and stealthily entered plaintiff's home and went upstairs; that identity of defendant was not known to plaintiff at the time; that plaintiff called to her husband to follow defendant, which the husband did; and that " . . . she followed her husband up to the room where the defendant was found, and where she found him and her husband in what appeared to her to be an encounter, and an assault upon her husband; . . . ." (89 N.W. at 1068)

In Hill v. Kimball, 76 Tex. 210, 13 S.W. 59, 7 L.R.A. 618, it is said the petition alleges:

" . . . that the wife was well advanced in pregnancy, and that defendant knew the fact, and that he was also aware that any undue excitement to a lady in that condition was likely to produce a serious injury to her health; that, notwithstanding these facts, he came to plaintiff's house, and in the yard, and in the immediate presence of the wife, he assaulted two negroes in a boisterous and violent manner, and that the assault was accompanied with profane language, and resulted in drawing blood. . . . ." (76 Tex. at 210, 13 S.W. at 59, 7 L.R.A. at 619)

In Brownback v. Frailey, 78 Ill.App. 262, it is said that the second count is substantially as the first, and that the first count is in substance that the defendant:

" . . . in the night time, wrongfully entered the house of the plaintiff in the absence of her husband, defendant well knowing the same, and did then and there flourish and display, in the presence of plaintiff, a whip he then and there had; and defendant then and there, in the presence of and to the plaintiff, said, in an excited and violent manner, that the husband of plaintiff owed him about $1,700, and then and there demanded that plaintiff should deed him fifty-four acres of land; . . . ." (78 Ill.App. at 263)

In the third count it is alleged in substance, among other things, that defendant, " . . . with force and arms assaulted the plaintiff and struck her with a whip . . . ."

In Razzo v. Varni, 81 Cal. 289, 22 P. 848, it is said that the complaint ". . . . merely sets forth in detail the circumstances attending an unauthorized and aggravated trespass on the close of plaintiff which have a material bearing on the issue of damages." (81 Cal. at 291, 292, 22 P. at 848) The court said further:

". . . . The trespass complained of was an aggravated one, and was committed with force, thirteen men entering the close to dig a ditch inside of plaintiff's inclósure. One man came with a hoe, another with a shovel, and another with a gun. The gun was left outside of the inclosure. This display of force was calculated, and was no doubt intended, to intimidate, and therefore it may be said that the entry complained of was made with force. . . . ." (81 Cal. at 294, 22 P. at 849)

In Chicago & N. W. Ry. Co. v. Hunerberg, 16 Ill.App. 387, plaintiff was in her house with two young children. Defendant's train was driven off the track and into the house. The court said:

". . . . While the plaintiff is thus in the chamber of her own home, and being about two months gone in pregnancy, she sees a portion of the freight train in question has left the side track, and is coming with great force and violence toward her house; she sees and hears the end car crash through her door-yard fence, and striking trees which fail to arrest its course, it comes against the house and tears away the porch belonging to it. The lives and limbs of herself and the children there were in imminent peril from such a frightful invasion of her premises and home, and she was overcome by a natural and reasonable fear. . . . ." (16 Ill.App. at 390)

In Newell v. Whitcher, 53 Vt. 589, 38 Am.Rep. 703, plaintiff, a girl blind from birth taught music in defendant's family and was lodged there over night. A certain room was assigned to plaintiff by defendant and his wife. At midnight, defendant came to plaintiff's room stealthily, sat on her bed, and solicited sexual intimacy which plaintiff refused. The court said:

". . . . Her right of quiet occupancy and privacy was absolute and exclusive; and the entry by stealth in the night into such apartments, without license or justifiable cause, was a trespass; and if with felonious intent, was a crime. State v. Clark, 42 Vt. 630.

"The approach to her person in the manner her testimony tends to prove—sitting on the bed and bed-clothes that covered her person and leaning over her with the proffer of criminal sexual intercourse; so near as to excite the fear and apprehension of force in the execution of his felonious purpose, was an *assault*. . . . ." (38 Am.Rep. at 704, 705)

In *Ex parte Hammett,* supra, this court noted that the authorities are divided on the question whether words alone unconnected with any trespassory act and not defamatory, give plaintiff a right of action for injuries alleged to have been caused by mental or emotional disturbance. This court said:

"The uniform decisions of this court, in line with the weight of authority, hold that such conduct is not actionable civilly and therefore impel a negative answer to the query. To be the subject of actionable damages some traditional tort such as slander or assault must be alleged. Mere words alone, however, abusive, not defamatory and unconnected with an assault cannot form the basis of a cause of action. Republic Iron & Steel Co. v. Self, 192 Ala. 403, 409, 68 So. 328, L.R. A.1915F, 516; Widener v. Alabama Great Southern R. Co., 194 Ala. 115, 69 So. 558; Louisville & N. R. Co. v. Bartee, 204 Ala. 539, 86 So. 394, 12 A.L.R. 251; Maze v. Employees' Loan Society, 217 Ala. 44, 114 So. 574; III Alabama Law Review 108 (Payne, Recovery of Damages for Unpleasant Mental Stimuli)." (259 Ala. at 242, 66 So.2d at 601)

Professor Payne, in 3 Alabama Law Review 108, supra, reaches the same conclusion as to the law in Alabama, to wit:

". . . . Mere words, unconnected with an assault and not defamatory, cannot constitute the basis for a cause of action no matter how indecent, rude or insulting the language may be. To put it differently, the infliction by words alone of honorific or anticipatory-personal-sensory stimuli is insufficient to support a cause of action. . . . ."

We do not understand that plaintiff here alleges publication or seeks to recover for slander.

■ In the instant case, the averments of the complaint do not charge defendant with the commission of any trespassory act. According to the authorities above referred to, the instant complaint does not state a cause of action under the law of this state, and the trial court did not err in sustaining the demurrer to the complaint.

The dissent is based partly on Continental Casualty Company v. Garrett, 173 Miss. 676, 161 So. 753. Although the statute is not referred to in *Garrett,* we wish to note that Mississippi is one of the few states which have actionable word statutes. 4 Vand.L.R. 82, 83. Mississippi Code Ann. § 1059 (1942), recites:

"All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; but this shall not deprive the courts of the power to grant new trials, as in other cases."

Affirmed.

MERRILL, BLOODWORTH, McCALL and SOMERVILLE, JJ., concur.

HEFLIN, C. J., and HARWOOD and MADDOX, JJ., dissent.

HEFLIN, Chief Justice (dissenting):

Title 14, § 11, Code of Alabama 1940, provides in pertinent part:

"Any person who enters into, or goes sufficiently near to the dwelling house of another, and, in the presence or hearing of the family of the occupant thereof, or any member of his family; or any person who in the presence or hearing of any girl or woman, uses abusive, insulting, or obscene language, shall, on conviction, * * *."

In connection with this statute this court in McVay v. State, 100 Ala. 110, 112, 14 So. 862, said as follows:

"The first clause of the statute was intended to protect the home, and the user of the language prohibited by the statute, in the presence or hearing of the family, or the occupant thereof, or any member of the family, without reference to the sex of such member, would be guilty of a violation of the statute."

In Continental Casualty Co. v. Garrett, 173 Miss. 676, 161 So. 753 (1935), the Mississippi court allowed recovery where an agent of a defendant insurance company had come into the home of the plaintiff in connection with settling an insurance claim, called the plaintiff a liar and used language implying that the plaintiff was seeking to defraud the company by a false claim as a result of which the plaintiff's illness had been aggravated and prolonged. After reciting that the great weight of authority under the common law is that mere words, however, offensive or insulting, when the conduct of the party does not amount to an assault, are not actionable, the court stated:

"Conceding, for the sake of the argument, that under the general doctrine of the common law, above stated, there would be no right of recovery in the present case, we are of the opinion that the issue here is to be disposed of rather under that line of cases which give particular recognition to actions arising out

of violations of the rights of the home. All our modern notions of law, common and statutory, and particularly in this state, comprise the requirement that the home is a place where the occupant and his family shall be entitled, not as a matter of sentiment, or of morals, or of good manners, but of positive law, to the right of quiet and peaceable enjoyment, free from hostile intrusions, whatever the character of the offensive intrusions may be, which includes, as its mere statement will prove, the right to be free from insults inflicted by those who intrude themselves within the precincts of the home; and that a violation of that right shall be deemed an actionable tort. See, for instance, Engle v. Simmons, 148 Ala. 92, 41 So. 1023, 7 L.R.A.(N.S.) 96, 121 Am.St.Rep. 59, 12 Ann.Cas. 740; Watson v. Dilts, 116 Iowa 249, 89 N.W. 1068, 57 L.R.A. 559, 561, 93 Am.St.Rep. 239; Hill v. Kimball, 76 Tex. 210, 13 S. W. 59, 7 L.R.A. 618; and compare Singer Sewing Mach. Co. v. Stockton [, 171] (Miss.) [209,] 157 So. 366."

In view of the above quoted statute, as interpreted by *McVay*, supra, and the persuasion of Continental Casualty Co. v. Garrett, supra, I feel that both counts of the complaint allege an actionable tort.

It is interesting to note that there has appeared a marked tendency on the part of many jurisdictions to recognize that the intentional infliction of mental distress by extreme and outrageous conduct constitutes a cause of action in itself, apart from any traditional tort. See Clark v. Associated Retail Credit Men, 70 App.D.C. 183, 105 F.2d 62 (1939); Stockwell v. Gee, 121 Okl. 207, 249 P. 389; Alcorn v. Anbro Engineering, Inc., 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216; Knierim v. Izzo, 22 Ill.2d 73, 174 N.E.2d 157. See also, Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033 (1939); Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich.L.Rev. 874 (1939); Wade, Tort Liability for Abusive and Insulting Language, 4 Vand.L.Rev. 63 (1950).

In 1948 the Restatement of Torts was amended to recognize as a separate tort, the intentional infliction of mental distress. Restatement, Second Torts, § 46 states in part as follows: .

"46 OUTRAGEOUS CONDUCT CAUSING SEVERE EMOTIONAL DISTRESS (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

HARWOOD and MADDOX, JJ., concur in the foregoing dissent.