278 So.2d 708

**Virginia HALL**

v.

**CITY OF HUNTSVILLE, Alabama, et al.**

**SC 59.**

Supreme Court of Alabama.

March 8, 1973.

Rehearing Denied April 5, 1973.

William G. Hamm, Jr., Huntsville, for appellant.

Ford, Caldwell, Ford & Payne and Robert L. Hodges, Huntsville, for appellees.

JONES, Justice.

This is an appeal from a judgment of the Madison County Circuit Court in favor of the defendants-appellees, City of Huntsville and Huntsville Hospital Board of Control, and against the plaintiff-appellant, Virginia Hall.

On June 7, 1964, the appellant was admitted to the Huntsville Hospital for treatment of a gastro-intestinal ailment. The following day a series of tests were begun on the appellant, including routine blood tests. The appellant's affliction was quite painful and she was given injections for the pain periodically during her stay in the hospital. Surgery was performed on the appellant to correct her stomach problem around June 16 and apparently this surgery was successful. However, soon after her operation, the appellant began having problems with her left hip in the area where she had received the frequent injections to ease her pain. Appellant's hip was hard and full, swollen and painful, and she had red streaks running down her leg. Appellant's doctor began treating the hip while she was still in the hospital, but appellant went home before the hip was completely healed. Early in July appellant was put back in the hospital, this time because of her hip which was giving her a great deal of trouble. It was determined that appellant had developed a serious "staph" infection in her left hip. The blood tests run upon the appellant by the hospital in early June had shown no sign of a "staph" infection. Appellant remained in Huntsville Hospital until August 1 receiving treatment for her hip infection. Following her discharge from the hospital the second time, it was the end of August before appellant was able to be up and around on her own and she was absent from her job

about six months from the time she first entered the hospital in June of 1964.

The case went to trial on counts 3 and 4 of appellant's amended complaint after appellees' demurrers to her original complaint were sustained by the trial court.

Counts 3 and 4, which are essentially the same, charge that the defendants were engaged in the operation of a hospital at Huntsville, Alabama; that for valuable consideration the defendants impliedly contracted to nurse and care for the plaintiff and to furnish her with hygienic, healthful and disease-free facilities, all for the purpose of the plaintiff's having surgery performed on her person; that pursuant to said contract, the plaintiff entered defendants' hospital, after having agreed to pay all reasonable compensation and charges therefor; that the defendants did not perform their contract to provide such facilities, but on the contrary, in violation of said contract, wholly failed to place the plaintiff in such of its facilities that were hygienic, healthful and disease free; and that as a proximate consequence of the defendants' breach of said implied contract, the plaintiff's hip became infected and the plaintiff was caused to undergo additional surgery, to incur considerable expenses, to suffer great pain and discomfort and to become permanently disabled.

The appellees' answers to the amended complaint asserted eight pleas setting forth primarily the defenses of general issue, governmental immunity and failure to comply with the provisions of Title 37, Sections 476 and 504, Code of Alabama 1940, as amended.

On October 11, 1971, trial was begun before a jury. The appellant's evidence established the facts set out at the beginning of this opinion and the appellees presented testimony relating to the hygienic safeguards and procedures used by the staff of Huntsville Hospital in the care of the appellant and in general. There was a conflict in the evidence concerning the type of hypodermic syringes used in giving the appellant her numerous "pain" shots. The appellant was positive the nurses used the older, nondisposable variety, whereas the nurses who gave the injections testified that only the new, disposable syringes were used.

After the evidence for both sides had been presented, the trial court gave the affirmative charge, without hypothesis, for both defendants. Pursuant thereto, the jury found in favor of the appellees, and judgment was entered accordingly.

Appellant's motion for a new trial having been denied, she brings this appeal. Appellant assigns as error the refusal of the trial court to grant her motion for a new trial and the court's giving of the affirmative charge without hypothesis for both defendants.

■ The appellant's contention, with respect to the maintenance of a contract action under the facts of this case, if adopted by the court, would establish an indefensible legal principle. To charge an implied contract to keep the plaintiff safe from infection, and then to prove merely that an infection did occur, would amount to equating the hospital's duty to that of an insurer. There is no question but that an implied contract did arise out of the relationship of the parties and that this included, among other things, the duty on the part of the hospital to furnish to the plaintiff a reasonable degree of care in rendering her immune to infection, a breach of which duty may be proven either by a failure to perform, or by a negligent performance. Vines v. Crescent Transit Company, 264 Ala. 114, 85 So.2d 436; Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817. However, a mere showing that an infection originated during her hospitalization, absent proof that such resulted from a failure of proper care and attention, or the result of the doing of a negligent act, does not meet the legal test for the breach of this contractual duty.

The only evidence on this point, although seriously disputed by the defendants, is the plaintiff's testimony that the syringe used in administering the injection was not the disposable type. Accepting the plaintiff's version as true, we are left to conjecture as to the effect of this practice. We cannot apply the tort doctrine of res ipsa loquitur in a contract action so as to impose liability by the mere showing of the end result. It may well be that the use of nondisposable syringes unduly increases the risk of infection and, therefore, the failure to use the safer disposable-type syringe (if such be the case) constitutes an actionable breach of the implied contractual duty owed the plaintiff by the defendants where injury to the plaintiff results therefrom. Neither the trial court, nor this Court, however, would be authorized to take judicial knowledge of such fact. Independent Life Ins. Co. v. Carroll, 222 Ala. 34, 130 So. 402.

We are not to be understood as announcing a rule to the effect that in every case the showing of the end result falls short of a proven breach. When a car manufacturer sells an automobile, there arises out of such sale an implied warranty of fitness when the product is used in the ordinary and intended manner. Title 7A, § 2–315, Code of Alabama 1940, as amended. In such cases, the mere proof, for example, that the steering wheel came off would be sufficient proof of the breach for the reason that the thing breached (not performed or wrongfully performed) was the thing promised.

■ Where the relationship of the parties gives rise to an implied contract, the initial inquiry is: What duty arises out of this relationship? Or, stated another way, what was promised? The answer lies in the nature of the relationship tested by applicable rules of contract law. When a fee-paying patient enters the hospital, it is out of the nature of this hospital-patient relationship that a duty arises to furnish certain care and attention—to do certain things and refrain from doing certain things. The hospital, for a valuable consideration, promises to do certain things and/or not to do certain things. The fact that a like duty is imposed by law, the violation of which gives rise to a tort action, does not of itself take away the fact of contract, or the corresponding right of election of remedies. Waters v. American Casualty Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524.[1]

■ To answer the question (what was promised), as it relates to this case, we must ask others: Does this relationship impose on the hospital the unqualified and absolute duty to render the patient free from infection? Or, does this relationship, in keeping with the intent or within the contemplation of the parties (meeting of minds), impose on the hospital the duty to prevent such infection to the degree and extent possible when measured by the standards of the hospital industry?

We submit that these questions are self-answering. An affirmative answer to the former ("unqualified duty") would constitute the hospital an insurer or guarantor and be violative of contract principles. An affirmative answer to the later (duty of reasonable care to prevent infection) preserves the integrity of contract law and recognizes the reality of the nature of the relationship out of which the contractual duty arises.

What we are saying is simply this: Whether a breach of contract has occurred must be tested in the light of what was promised. When that test is applied to facts disclosed by the record before us, we are constrained to the conclusion that the trial court did not err in giving the affirmative charge without hypothesis.

Having examined and treated all questions presented and argued, we find nothing that warrants a reversal of the judgment of the trial court.

Judgment affirmed.

1. See also Holcomb v. Escambia County Hospital Board (1973), 291 Ala. 114, 278 So.2d 699.

HEFLIN, C. J., and HARWOOD and FAULKNER, JJ., concur.

MERRILL, COLEMAN, BLOODWORTH, MADDOX and McCALL, JJ., concur in result.

COLEMAN, Justice (concurring in result):

I concur in affirmance for the reason that the evidence failed to show that defendant had committed a breach of the implied contract.

McCALL, Justice (concurring in the result).

I concur in the result that the trial court did not err in giving the affirmative charge for the two defendants. However, as to the remainder of the opinion I am in disagreement and respectfully dissent for the reasons set forth in the dissenting opinion in Holcomb v. Escambia County Hospital Board, 1973.

MERRILL, BLOODWORTH and MADDOX, JJ., concur.