400 So.2d 369 (1981)
Robin TAYLOR
v.
BAPTIST MEDICAL CENTER, INC., a Corporation, and Dr. Herman Hassell.
79-309.
Supreme Court of Alabama.
April 24, 1981.
Rehearing Denied June 12, 1981.
*370 John A. Taber and J. McGowin Williamson, Greenville, for appellant.
Thomas H. Keene and Charles Stakely, Jr., of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellees.
*371 BEATTY, Justice.
This is an appeal from a judgment which was granted in favor of a physician and hospital. We affirm in part, reverse in part, and remand.
Mrs. Robin Taylor was under the obstetrical care of Dr. Herman Hassell when, approximately twenty-three weeks into her pregnancy, she underwent an emergency appendectomy. At that time, Mrs. Taylor's surgeon explained to her that the surgery could have an adverse effect upon her pregnancy. Three weeks later Mrs. Taylor began to experience labor pains. When Dr. Hassell was notified of this fact at 3:00 a. m., he instructed her to go Baptist Medical Center Hospital. Although the nurses at Baptist kept him apprised of Mrs. Taylor's progress via several telephone conversations, Dr. Hassell did not arrive at the hospital until ten minutes after Mrs. Taylor had delivered at 11:30 a. m. The child was either stillborn or died within moments of birth. Mrs. Taylor was attended by two nurses throughout her labor and delivery. No physician was present during this time.
Mrs. Taylor filed suit against Dr. Hassell and Baptist Medical Center Hospital. The claim against Dr. Hassell consisted of a count in negligence and breach of contract of care. The claim against Baptist was for negligence in failing to notify Dr. Hassell, and in failing to provide another physician or other competent medical attendants. Because of this conduct she alleges that she suffered physical pain and mental anguish. There is no claim for wrongful death of the child. The medical testimony was uncontradicted that because of the age and stage of the fetus, i. e., weight of one pound, eight ounces, fused eyelids, transparent skin with no subcutaneous tissue, nothing could have been done which might have saved the child's life.
In support of their motions for summary judgment, the defendants offered the depositions of the two nurses who were on duty during Mrs. Taylor's labor and delivery; the deposition of Dr. Dorrough, the Chief of Services for the Baptist Medical Center Obstetric Unit; and the deposition of Dr. Hassell. Mrs. Taylor responded by offering her own deposition in addition to those offered by the defendants. All three parties submitted briefs and orally argued their respective positions. After a review of the materials submitted, the trial judge granted both defense motions. Specifically, he found no genuine issue of material fact with regard to the liability of Baptist, either as to negligence, or proximate causation. Further, he found that Mrs. Taylor failed to offer any evidence to establish that she suffered any damage, either mental, emotional or physical, because of Dr. Hassell's failure to attend, nor did she have any compensable damages because the emotional distress she suffered was inseparable from that suffered as a result of the loss of her child.

I
Mrs. Taylor contends summary judgment was improperly granted on her claim that Baptist negligently failed to "notify her physician, or obtain a physician for her or to supply her with competent medical attendants in the delivery of her child." We disagree.
The evidence is clear that the nurses at Baptist notified Dr. Hassell of Mrs. Taylor's admittance and progress. She relies upon Birmingham Baptist Hospital v. Branton, 216 Ala. 326, 113 So. 79 (1927), for the proposition that the negligence of the nurses in failing to call her physician is a jury question, and not a matter for expert testimony. That proposition is thus inapplicable to this case. In Branton the nurses failed to comply with the plaintiff's repeated requests to notify her obstetrician of the imminent birth of her child. In this case, on the other hand the evidence is uncontroverted that the nurses notified Dr. Hassell and kept him informed of Mrs. Taylor's progress.
The issue of whether Baptist acted negligently in failing to obtain another physician in Dr. Hassell's absence is answered by reference to testimony that Dr. Hassell told the nurses he would be "right on over" *372 thus leading the nurses to reasonably conclude no other physician would be needed as well as the following deposition testimony of Dr. Dorrough:
Q. Based upon your examination of the records, do you have an opinion as to whether the nurses ... and the Montgomery Baptist Hospital exercised with Robin Taylor the same degree of care, skill and diligence as hospitals in this community ordinarily have and exercise in a similar case?
A. Yes.
Q. In your opinion, did they?
A. They did.
Q. Did you see any hospital malpractice in connection with this case?
A. No.
Finally, the evidence is uncontroverted that Baptist did in fact supply Mrs. Taylor with competent medical attendants in the delivery of the child. Both nurses who attended Mrs. Taylor throughout her labor and delivery were well qualified nurses with considerable experience in the area of childbirth.
Based upon the evidence and testimony of Dr. Dorrough, we conclude that summary judgment was properly entered in favor of Baptist Medical Center.

II
Mrs. Taylor's claim that summary judgment was improperly granted on her tort claim against Dr. Hassell, i. e., that he acted negligently when he failed to attend during her labor and delivery, is well taken.
Mrs. Taylor seeks to recover for the mental anguish she suffered as a result of Dr. Hassell's failure to attend. We note that Mrs. Taylor has described the consequences of Dr. Hassell's conduct as "great physical pain and mental anguish." It is clear that she has claimed no actual physical injury. Historically, the rule governing recovery of damages for such claims was:
Where there has been a physical injury to a person, under circumstances warranting the recovery of compensatory damages therefor, mental suffering, which is a natural incident thereto, furnishes one of the elements of recoverable damages, and in such case the jury may always consider the element of mental suffering and award compensation therefor. The body and mind are so closely connected that the mind is, of necessity, affected by any injury to the body.8 A. & E. Ency. of Law, pp. 662, 663, 664. While there have been many instances in which the courts, in cases of simple negligence merely, because there was no physical injury, but where the circumstances showed great mental agony, have denied relief, they have universally allowed mental suffering to be considered as an element of damages in all cases where there is the slightest physical injury accompanied by circumstances showing mental distress.Warren v. Boston R. R. Co., 163 Mass. 484, 40 N.E. 895; 8 A. & E. Ency. of Law, p. 666. [Birmingham Water Works Co. v. Martini, 2 Ala.App. 652, 657-58, 56 So. 830 (1911).]
However this Court has recently explored anew the general requirement that physical injury be present in any recovery for mental anguish in American Road Insurance Company v. Inmon, Ala., 394 So.2d 361 (1980):
Traditionally, damages for mental anguish alone have not been recoverable in this jurisdiction. Western Union Telegraph Co. v. Jackson, 163 Ala. 9, 50 So. 316 (1909). However, if the mental suffering has been accompanied by some physical injury, damages for mental suffering have been allowed. East Ala. Express Co. v. Dupes, 271 Ala. 504, 124 So.2d 809 (1960) (plaintiff who sustained whiplash and fracture allowed to recover for her "worry" about the future result of her injury); Macke v. Sutterer, 224 Ala. 681, 141 So. 651 (1932) (pregnant tenant who was injured from fall from steps allowed to recover from landlord damages for mental anguish (fear) because she was "caused to be in danger of a miscarriage ..."); and see Bryson v. Phelphs, 23 Ala.App. 346, 125 So. 795; *373 cert. den., 220 Ala. 389, 125 So. 798 (1930) (physical damage to his automobile allowed the owner to recover damages for his delay, vexation, annoyance and mental anguish).
Other decisions and authorities reveal a remedial situation hypocritical in nature. For example, the passenger of a carrier is allowed to recover for the use of insulting language causing mental suffering because the courts have found an implied promise in fact to provide protection from such abuse. Seaboard Air Line Ry. Co. v. Mobley, 194 Ala. 211, 69 So. 614 (1915) (reversed on other grounds in Tomme v. Pullman Co., 207 Ala. 511, 93 So. 462 (1922)). Likewise it was an easy step to apply the theory of a contractual duty implied by law to make an innkeeper similarly liable. Dixon v. Hotel Tutwiler Operating Co., 214 Ala. 396, 108 So. 26 (1926). Debt collection cases allow recovery when there is a traditional tort, such as slander or a personal trespass, Maze v. Employees' Loan Soc., 217 Ala. 44, 114 So. 574 (1927); and a trespass quare clausum fregit is also sufficient to allow damages for "nervous excitement" when no physical violence was suffered. Engle v. Simmons, 148 Ala. 92, 41 So. 1023 (1906). These decisions feign to insist upon the presence of a tort of long standing when it is perfectly obvious that any injury from the traditional tort is slight and the damages sought for the mental disturbance constitute the primary (if not the sole) reason for having initiated the action. Consider Horne v. Patton, 291 Ala. 701, 287 So.2d 824 (1974) (unauthorized disclosure by physician of his patient's condition constituted prima facie invasion of right of privacy which would authorize damages for mental suffering, shame or humiliation); Holcombe v. Whitaker, 294 Ala. 430, 318 So.2d 289 (1975) (fraudulent misrepresentation made willfully authorized recovery for shame, humiliation, and mental anguish, adopting Morris v. MacNab, N.J. [25 N.J. 271] 135 A.2d 657 (1957), which stated: "[W]here the wrong is willful rather than negligent, recovery may be had for the ordinary, natural, and proximate consequences though they consist of shame, humiliation, and mental anguish."). The damages recoverable for mental or emotional harm thus have been described as "parasitic," that is, the right to recover for them has been dependent upon recovery for another independent, or separate, tort recognized at common law. Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard L.Rev. 1033, 1048 (1936). This distinction, however, was neither significant nor followed in Herman Saks & Sons v. Ivey, 26 Ala. App. 240, 157 So. 265 (1934). In that case the defendant had sent to the plaintiff a collection letter whose terms violated a criminal statute (Code of 1923 §§ 3194, 3195; Cf. Code of 1975, § 13-6-17) imposing a sanction against sending abusive letters to another which might tend to breach the peace. The Court of Appeals, in recognizing a civil cause of action in the recipient, authorized recovery of substantial damages for the plaintiff's mental anguish, annoyance and inconvenience (plaintiff also alleged that she had been made "sick and sore for a long period of time"). And in Hamner v. Bradley, 289 Ala. 624, 270 So.2d 81 (1972), involving allegations of abusive, insulting, provocative and threatening language by an insurance agent toward a hospitalization policyholder, a convincing dissent recognized
a marked tendency on the part of many jurisdictions to recognize that the intentional infliction of mental distress by extreme and outrageous conduct constitutes a cause of action in itself, apart from any traditional tort,
citing cases from other jurisdictions, articles on the subject, and Restatement (Second) of Torts § 46 (1948).
While it is true that Inmon dealt with the intentional tort of outrageous conduct, nevertheless the analysis of the damages aspect was not by virtue of that fact limited solely to the tort of outrageous conduct nor should it be so limited logically. Indeed, it is likely that the instant case would *374 not have been the first case to consider the application of this theory of damages had the appeal in Peddycoart v. City of Birmingham, Ala., 392 So.2d 536 (1980) presented that issue. As we pointed out in that case, although the plaintiff had alleged a cause of action in negligence and claimed damages solely for mental anguish, that issue was not preserved for appellate review. Thus we did not have the opportunity in that case to determine whether the plaintiff could recover damages for mental anguish alone in a negligence action.
That issue is before us in this case, accordingly, for the first time. As the quoted discussion aptly discloses, to continue to require physical injury caused by culpable tortious conduct, when mental suffering may be equally recognizable standing alone, would be an adherence to procrustean principles which have little or no resemblance to medical realities. Thus we hold that summary judgment against Mrs. Taylor on the tort count was inappropriate.

III
Mrs. Taylor argues that summary judgment was also improperly granted as to her claim for mental anguish arising from Dr. Hassell's alleged breach of his contract to "provide her with pre-natal, deliver[y], and post-natal care in connection with her pregnancy and impending child birth." We agree.
This Court has recognized the right of a plaintiff to sue for breach of implied contracts arising from the rendition of medical services. See, e. g., Horton v. Northeast Ala. Regional Medical Center, Inc., Ala., 334 So.2d 885 (1976); Berry v. Druid City Hospital Board, Ala., 333 So.2d 796 (1976). In order to state a cause of action, "a complaint grounded in implied contract must state facts and circumstances the acts and conduct of the parties from which the contract alleged can be inferred." Berry v. Druid City Hospital Board, supra, at 801. The plaintiff must also establish a breach of that contract. However, the mere showing that the services contracted for were not rendered does not establish a breach: "Whether a breach of contract has occurred must be tested in light of what has been promised." Hall v. City of Huntsville, 291 Ala. 124, 278 So.2d 708, 711 (1973). The terms of the promise in this case are the same as that which establishes the standard for negligence:
The relation of physician and patient is not necessarily contractual, but may be consensual merely, and whether one or the other, when the physician assumes and undertakes to act in this relation, he incurs the consequent duty, exacted of the relation, that in the practice of the profession he will exercise that reasonable and ordinary care, skill, and diligence exercised generally by members of his profession in the same neighborhood, and a failure to observe this degree of care and diligence is negligence. This rule is elementary, and has its foundation in most persuasive considerations of public policy. ... [Thaggard v. Vafes, 218 Ala. 609, 119 So. 647 (1928) (emphasis added.) Accord, Hall v. City of Huntsville, supra.]
Although the general rule in Alabama is that mental anguish is not a recoverable element of damages in an action for breach of contract, Sanford v. Western Life Insurance Co., Ala., 368 So.2d 260 (1979); Stead v. Blue Cross-Blue Shield of Alabama, Ala., 346 So.2d 1140 (1977), an exception to this rule, pertinent to the case at hand, has been recognized by this Court:
[W]here the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, it is just that damages therefore be taken into consideration and awarded.... [Stead v. Blue Cross-Blue Shield of Alabama, supra, (quoting Becker Asphaltum Roofing Co. v. Murphy, 224 Ala. 655, 141 So. 630 (1932)).]
See also, Alabama Water Service Co. v. Wakefield, 231 Ala. 112, 163 So. 626 (1935); Taxicab Co. v. Grant, 3 Ala.App. 393, 57 So. 141 (1911).
*375 We conclude that the tenor of Mrs. Taylor's complaint against Dr. Hassell and the deposition of Dr. Dorrough raise a scintilla of evidence of both a contract and a breach thereof. Therefore, summary judgment was improperly granted on this count and is due to be reversed. Furthermore, we are of the opinion that, upon sufficient proof of an implied contract, breach and damages, Mrs. Taylor may recover for mental anguish which may have resulted from the breach of Dr. Hassell's implied contract of care.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
JONES, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C. J., and ALMON, J., concur in part and dissent in part.
MADDOX and FAULKNER, JJ., are recused.
ALMON, Justice (concurring in part and dissenting in part).
I disagree with that portion of the majority opinion which has the effect of allowing damages in all tort cases for emotional distress in the absence of any physical injury whatsoever. This is a departure from the long standing rule in this jurisdiction.
With the exception of those cases where the emotional distress was intentionally inflicted, Engle v. Simmons, 148 Ala. 92, 41 So. 1023 (1906), arose from a breach of contract, Stead v. Blue Cross-Blue Shield of Alabama, 346 So.2d 1140 (Ala.1977), or resulted from the defendant's fraudulent conduct, Holcombe v. Whitaker, 294 Ala. 430, 318 So.2d 289 (1975), our courts have consistently recognized the rule that physical injury is a prerequisite to recovery for mental anguish. See e. g., East Alabama Express Co. v. Dupes, 271 Ala. 504, 124 So.2d 809 (1960); B. F. Goodrich Co. v. Hughes, 239 Ala. 373, 194 So. 842 (1940); Gregath v. Bates, 359 So.2d 404 (Ala.Civ.App.1978).
TORBERT, C. J., concurs.