Thomas Shellnutt filed an action against the Randolph County Hospital (Hospital), alleging an agreement between the parties, whereby Randolph County Hospital agreed to provide medical services to him. His complaint alleged that Randolph County Hospital breached this agreement by charging for services not performed and by charging grossly inflated and unreasonable prices for services rendered. Shellnut demanded judgment against Randolph County Hospital in the amount of $2,288, which sum had been previously paid to the Hospital by Liberty National Life Insurance. Randolph County Hospital counterclaimed for money owed by Shellnutt on an open account. Randolph County Hospital's motion for directed verdict on Shellnutt's claim was granted by the trial court. Hospital's counterclaim for money due was submitted to the jury and a verdict in favor of the Hospital was returned in the amount of $3,371.85. Shellnutt appeals to this court not only from the directed verdict in favor of the Hospital in his action but also from the jury verdict and judgment in favor of the Hospital on its counterclaim. We will consider first Shellnutt's claim that the trial court erred in directing a verdict in favor of the defendant, Hospital, in his action.
The scintilla rule, incorporated in Alabama Rules of Civil Procedure 50, is the standard by which the trial court must determine whether a directed verdict is proper. A directed verdict is proper, "where there is a complete absence of pleading or proof on an issue or issues material to the cause of action or defense, and second, where there are not any controverted issues of fact upon which reasonable men could differ." See Loeb Co. v. Martin, 295 Ala. 262, 327 So.2d 711
(1976).
Shellnutt's complaint alleges a breach of an agreement between himself and the hospital. Proof of whether a breach occurred must be tested in view of what was promised or agreed by the parties. Hall v. City of Huntsville, 291 Ala. 124,278 So.2d 708 (1973).
A hospital agrees to render certain services to a patient and exercise reasonable care in so doing. A patient is generally liable upon an express or implied contract for such medical services. See, e.g., Spencer v. West, 126 So.2d 423 (La.Ct.App. 1960). Where, as in the case sub judice, there is no evidence of an express contract, an agreement is implied that a hospital will render services and in return receive a reasonable fee for these services. See, Spencer v. West, supra; Bismarck HospitalAssociation v. Burleigh County, *Page 634 146 N.W.2d 887 (N.D. 1966); Piggee v. Mercy Hospital,199 Okla. 411, 186 P.2d 817 (1947). We must, therefore, examine the record to determine if Shellnutt presented "a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla" in support of his complaint that Randolph County Hospital charged grossly inflated prices and charged for services not rendered, and, thus, acted outside this implied agreement. Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797
(1972).
The facts pertinent to our examination are as follows.
Shellnutt was hospitalized at Randolph County Hospital on three separate occasions during August 1982. After receiving the bills for these visits, Shellnutt refused to pay the amounts due to the Hospital, claiming that he was wrongfully charged for certain services and for certain drugs, including Maalox, Valium, Tagamet, Haley's M.O., Demeral, Mylanta, Robitussin, and Magnesium Citrate. Shellnutt also presented evidence concerning the reasonableness of the hospital's charges. This evidence consisted mostly of comparisons between prices charged at the hospital and at his store, where several nonprescription drugs are sold. He pointed out that Hospital charges for certain drugs were considerably higher than prices for similar drugs at his store. However, George Waldrop, hospital administrator at Lanier Memorial Hospital, testified that the charges at Randolph County Hospital were reasonable and, in fact, were comparable to charges at Lanier Hospital.
Randolph County Hospital contends that most of these drugs, although not physically taken by Shellnutt, were ordered and delivered to him, and he was, therefore, properly charged for these drugs. It is undisputed that most of the drugs Shellnutt claims he never took were issued to him and taken to his hospital room. According to the testimony of a Randolph County Hospital nurse, medicine issued to a patient and taken to his room must be charged to the patient because the drug cannot then be re-used, due to possible contamination and loss of identity of the drug. Thus, pursuant to hospital policy, the drugs that were issued and delivered to Shellnutt's room were properly his responsibility whether he took them or not. However, Shellnutt also raises questions about certain services and drugs that he claims he never received. He testified that he never had an electrocardiogram but was charged for it. He also testified that he never received Valium, Magnesium Citrate, or Robitussin, and did not receive any blood from the blood bank during the second and third admissions in August 1982.
An employee at Randolph County Hospital testified that Shellnutt did receive these drugs, some of them intravenously. There was also in evidence the results of an electrocardiogram administered to Shellnutt.
As noted above, the testimony concerning whether Shellnutt received certain drugs and services for which he was charged is disputed. The reasonableness of certain other charges is also disputed. Where there is a conflict in the testimony, the jury should resolve the conflict therein and determine the credibility of the evidence presented. See Merchants Bank v.Cotton, 289 Ala. 606, 269 So.2d 875 (1972). Although Shellnutt's testimony is not altogether clear and the evidence in support of his claim is slight, we must view the evidence presented in a light most favorable to the nonmoving party.O'Donohue v. Citizens Bank, 350 So.2d 1049 (Ala.Civ.App. 1977).
We find that Shellnutt presented a scintilla of evidence in support of his claim that he was wrongfully charged for services not rendered by the Hospital and that certain charges made by the Hospital were excessive or unfair. Thus, in the case at bar there were issues of fact for the jury to resolve, and the trial court erred by not letting the jury perform that duty.
Shellnutt's next contention is that the verdict and judgment in favor of the Hospital on its counterclaim should be reversed because the trial court asked questions of several witnesses during the trial that had the effect of prejudicing his case. We disagree. *Page 635 
To place a trial court in error for asking questions of witnesses during the trial, objections must be made to the questions asked or remarks made by the trial court. Rice v.Hill, 278 Ala. 342, 178 So.2d 168 (1965). At no time during the trial did Shellnutt object to the questions asked of the witnesses or remarks made by the trial court. In the absence of objections, the trial court cannot be placed in error.
Finally, Shellnutt, in brief here, requests that we grant him an attorney's fee for the services of his attorney in preparing and presenting this appeal.
The rule in Alabama is that attorney's fees cannot be recovered unless authorized by contract, statute, or equitable grounds. Highland Underwriters Insurance Co. v. Elegante Inns,361 So.2d 1060 (Ala. 1978). Shellnutt has failed to establish that he is entitled to a fee on any of the grounds prescribed by the rule.
The judgment of the trial court on the Hospital's counterclaim is affirmed. The judgment of the trial court directing a verdict for the Hospital in Shellnutt's case in chief is reversed and the cause remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.